JOHN AINSFIELD ET AL., APPELLEES, V. ANDREW B. MORE, APPELLANT.

30  385<br>f60  611

[FILED SEPTEMBER 23, 1890.]

1. **Review.** The pleadings and evidence examined, and *held*, to sustain the judgment.

2. **Deeds:** CORRECTION: LIMITATIONS: WHEN THE STATUTE BEGINS TO RUN. In a suit where the relief demanded consists in the correction of a mistake in the drafting or recording of a deed conveying lands thirty years before the commencement of such suit, and the correcting of the mistake involves no change of actual possession or disturbance of investments made by the party against whom the correction is sought, and leaves the enjoyment of the property to go on in harmony with the prior acts of the parties in interest, the statute of limitation being pleaded, *held*, that the statute began to run upon the discovery of the mistake, or of such fact or facts as would put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery. (*Ormsby v. Longworth*, 11 O. St., 653.)

APPEAL from the district court for Douglas county. Heard below before GROFF, J.

*Gregory, Day & Day,* and *George S. Smith,* for appellant, cited: *McClelland v. Sanford,* 26 Wis., 595; *Miner v. Hess,* 47 Ill., 170; *Harter v. Christoph,* 32 Wis., 247; *McTucker v. Taggart,* 29 Ia., 479; *Strayer v. Stone,* 47 Id., 336; *Ivinson v. Hutton,* 8 Ott. [U. S.], 79; Story, Eq. Juris.,

25

sec. 164; *McGoren v. Avery*, 37 Mich., 120; *Else v. Kennedy*, 67 Ia., 376; *Wellon v. Merrick Co.*, 16 Neb., 83; Hill, Trusts, 265*; *Burke v. Smith*, 16 Wallace [U. S.], 390; *Godden v. Kimmell*, 99 U. S., 201; *Ware v. Galveston*, 111 Id., 170; *Bank U. S. v. Daniel*, 12 Peters [U. S.], 52*; *Lewis v. Marshall*, 5 Peters [U. S.], 470*.

*W. J. Connell*, for appellee Ainsfield.

*E. W. Simeral*, for appellees Rosewater *et al.*

Cobb, Ch. J.

John Ainsfield, Marcus Rosenwaser, and Andrew Rosewater exhibited their petition in the district court of said county alleging that they and their grantees are in the actual possession of the following described real estate in said county, to-wit: Beginning at the southwest corner of the southeast quarter of the southwest quarter of section 26, township 15 north, of range 13 east, of 6th P. M., thence north 6 chains, thence east 8 91 chains, thence south 10½ degrees east 4.39 chains, thence south 1.44 chains to the south line of section 26, thence west 9.33 chains to the place of beginning, containing 5½ acres, more or less.

The plaintiffs allege that Andrew B. More, defendant, claims an interest and estate in said premises adverse to them; that on December 24, 1857, he, for a valuable consideration, by deed in due form, conveyed said real estate, with other land, to Lucy A. Goodwill, under whom plaintiffs derive title, but that by mistake in recording said deed, or in writing the description of the land intended to be conveyed, the word east, after the words "thence north 72½ degrees," was inserted in place of the word west, by reason of which the defendant is wrongfully and unlawfully claiming title to said land, to the injury and prejudice of plaintiffs. That the correct description of the land intended to be conveyed by defendant to Goodwill, and which

includes the real estate now owned by plaintiffs, is as follows : Beginning at a point 2.72 chains north 71 degrees west from the quarter section corner between sections 26 and 35 (magnetic variation 11¼ degrees east), thence south 17 degrees east 10.15 chains to a black oak, thence north 60 degrees west 1.33 chains, thence north 72½ degrees west 1.83 chains, thence north 57 degrees west 6.20 chains, thence north 75 degrees west 5.65 chains, thence north 82 degrees west 6.64 chains, thence north 21.22 chains, thence east 7.80 chains, thence south 10 degrees west 4.20 chains, thence south 10½ degrees east 14.70 chains, thence south 86½ degrees east 7.90 chains to the place of beginning, containing 23.65 acres, in sections 26 and 35, in township 15 north, of range 13 east. That the plaintiffs and their grantees have been in the actual, continuous, notorious, and adverse possessson of said land for more than fifteen years last past, paying all taxes levied or assessed against it and claiming to be the owners thereof. Plaintiffs pray to be declared to be the owners in fee simple of said land, that their title thereto may be quieted, and that the deed of defendant to Goodwill, and the record thereof, be corrected and reformed by inserting the word west in place of said word east, and that said defendant be forever enjoined from interfering with the possession of said land, or making claim of title thereto, and be forever barred of all right, title, interest or claim in said land and be required to pay the costs of this action, and for further relief.

On motion to the court, and for cause shown, the defendant was allowed to file a cross-bill herein and make C. E. Hawver, Harriet L. Hawver, and Frank J. Kasper additional parties defendant to this action, as follows : " That he admits that he is the owner of the lands mentioned and has asserted ownership thereof; but expressly denies each and every other allegation in the petition contained, and expressly denies that any mistake was at any

time made, either in writing or recording of the deed referred to, or that the plaintiffs, their grantees or grantors, have been in actual, notorious, and adverse possession of said lands or any part thereof for the fifteen years last past, and further denies that plaintiffs have had or been in possession in any manner whatever except by willful and wrongful entry thereon within the past five years from this date and not prior thereto.

"5. The defendant further alleges that he was and is, and during all the time mentioned has been, the absolute, owner of land lying and situate upon the west side of the southeast quarter of the southwest quarter of section 26 and in the northern portion of the northeast quarter of the northwest quarter of section 35, all in township 15 north, of range 13 east, of 6th P. M., as covered by the claim under the pretended mistake in deed, holding the same by good, perfect and indefeasible title from the United States.

"6. On August 24, 1874, Lucy A. Goodwill, without claim or color of title, but to the injury and wrong of defendant, made a pretended conveyance of the same to George G. Earle.

"7. On March 22, 1878, George G. Earle and wife made a pretended conveyance of the same to C. E. Hawver.

"8. On October 14, 1885, C. E. Hawver and wife made a pretended conveyance to Frank J. Kasper and Andrew Rosewater of the special portion set up and claimed by plaintiffs, and on June 15, 1886, Hawver and wife made another pretended conveyance to plaintiffs.

"9. Defendant alleges that each and all of said pretended conveyances were made without color of ownership in said pretended grantors; that defendant at no time parted with his title or interests, either equitable or legal, in said lands.

"10. That said pretended conveyances create a cloud upon plaintiffs' title and estate therein; that they be held for naught and the parties be forever barred from setting up any claim of title thereto and the defendant have complete relief," etc.

On the 29th of June, 1887, Frank J. Kasper was allowed to answer instanter, and Frank Shoull was made defendant, and answered denying that said More is the owner of the property, denying that the conveyance by Lucy A. Goodwill to George G. Earle was made without claim or color of title, and denying that the other conveyances referred to in the cross-petition were without claim or color of title, but alleging that on December 24, 1857, said More was the owner of the following land: Beginning at a point 2.72 chains north 71 west from the quarter section corner between sections 26 and 35 (magnetic variation 11¼ east), thence south 17 east 10.15 chains to a black oak, thence north 60 west 1.33 chains, thence north 72½ west 1.83 chains, thence north 57 west 6.20 chains, thence north 75 west 5.65 chains, thence north 82 west 6.64 chains, thence north 21.22 chains, thence east 7.80 chains, thence south 10 west 4.20 chains, thence south 10½ east 14.70 chains, thence south 86½ east 7.90 chains to the beginning, containing 23.65 acres, in sections 26 and 35, township 15 north, range 13 east, of 6th P. M., in said county. That on said day he conveyed the same to Lucy A. Goodwill, but either in the deed itself, or the record of it, there was a mistake in the description of the land in the words "thence north 72½ west 1.83 chains." The word east was inserted instead of west, as the direction of variation, the description reading "thence north 72½ east 1.83 chains." Defendant alleges that it was the intention of the grantor to convey the said land described, and that the insertion of the word "east" in place of west in the third course of description was a clerical error and mistake in drawing the deed; that on August 24, 1874, Goodwill conveyed by warranty deed to George G. Earle the following: Beginning at a point 2.72 chains north 71 west from quarter section corner between sections 26 and 35, thence south 17 east 40 chains, thence west 17.55 chains to a point 50 links north of southeast corner of southwest of

southwest section 26, thence north 19.50 chains to north-
east corner of said southwest of southwest section 26, thence
east 7.80 chains, thence south 10 west 4.20 chains, thence
south 10½ east 14.77 chains, thence south 86½ east 7.70
chains to the point of beginning; that on March 22, 1878,
said Earle conveyed by warranty deed said last described
tract to Carrie E. Hawver; that in the year 1878 she died,
having devised to her husband, Samuel Hawver, said prop-
erty; that on October 14, 1885, Samuel Hawver and his
then living wife (he having remarried) conveyed by war-
ranty deed to Andrew Rosewater, plaintiff, and to this
defendant the following: Beginning at northwest corner
of southeast southwest section 26, township 15, range 13,
thence south 14 chains, thence east 4.18 chains, thence
north 14 chains, thence west 4.18 to the beginning, being
5.85 acres; that afterwards Rosewater conveyed his interest
in said land to Frank Shoull, who, being a party defendant,
makes this his answer to the cross-petition as well as the
answer of Kasper. They allege that they are the owners
in fee simple of said last described land, and with their
grantors have been in actual possession for —— years last
past, and are now in peaceable possession, having large
improvements thereon.

The defendants pray that the description in the deed
from More and wife to Goodwill may be reformed and
corrected, according to the facts, to express the intention
of the parties thereto, and that it may be adjudged and
decreed that they are the owners in fee simple of the last
described tract of land; that said More has no interest,
title, or claim thereto, and that the title thereto be quieted
in these defendants, and that A. B. More pay the costs of
this action, etc.

On March 5, 1888, More made an amendment to his
original answer and cross-bill, and further setting up as
additional grounds of defense that the deed which he made
to Lucy A. Goodwill, referred to, was made and delivered

in the year 1857, and that any alleged mistake in the deed, or the recording of it, arose more than ten years prior to the bringing of this action and is barred by the statute of limitations, and that each and all of the pretended claims of plaintiff, and of the other defendants hereto, are without any color of right.

On March 5, 1888, defendants Kasper and Shoull replied to the answer of More, and denied each and every allegation therein, except the date of the Goodwill deed, and alleged that they had no knowledge of any claim to said property by More, and had no knowledge that there was any error in the Goodwill deed until the year 1886, when More first claimed the ownership of the same, and these defendants first learned of the mistake in said description.

The plaintiffs replied to the answer of More, denying that their cause of action arose more than ten years prior to the commencement of this suit, and denying that their action is barred by the statute of limitations. They allege that neither they nor their grantees had any knowledge of the mistake in description set forth in said petition, or had any knowledge that More claimed any adverse title or interest in the lands in controversy, until within two years next before the commencement of this action; they further deny every allegation contained in said answer, except that certain deeds were executed, but deny that the deed executed by Hawver to Kasper and Rosewater covered the special portion set up and claimed by plaintiffs herein.

The defendant More replied to the answer and cross-bill of Kasper and Shoull denying each and every affirmative allegation therein not admitted or set forth in his answer and cross-bill herein, and says that the deed made by him to Lucy A. Goodwill was made and delivered in the year 1857, and more than ten years have elapsed since the alleged mistake, as the grounds of defense and cause of action in said cross-bill, arose, and that the same is barred by the statute of limitations, and that plaintiffs are guilty of laches herein.

The defendant also moved the court for leave to correct his testimony heretofore given in his own behalf, on the ground that at the time of so testifying he was laboring under great physical pain and suffering, affecting for the time being his memory, and preventing him from recalling the facts as clearly as he otherwise might have done; that he now recollects of executing a deed to Lucy A. Goodwill which was presented to him by one Byers; that he objected to the deed as not properly describing the land theretofore claimed by Goodwill, under the claim club law, and the deed was then and there altered by changes and erasures in red ink by Byers, who claimed it reduced the quantity of land to fourteen or fifteen acres, the amount claimed by Goodwill, and the deed did not include, nor was it intended to include, the land in controversy, or any portion thereof; and he would say that if there was any mistake in the deed, it was that it did in fact contain a greater number of acres than was represented to him by Byers at the time he signed the same; which motion was overruled by the court and exceptions were taken.

On April 20, 1888, there was a final decree in the court below, finding that the several allegations in the plaintiffs' petition were true, as therein alleged, and that the plaintiffs were entitled to the relief in their petition prayed, and that the several allegations in the answer of Kasper and Shoull are true, and that at the time of the execution of the deed by Andrew B. More to Lucy A. Goodwill, on December 24, 1857, said More was the owner in fee simple of the land hereinafter described, and that it was the intention of said More to convey to said Goodwill the said land as described herein, but by mistake in writing the description of said land in said deed, or by mistake in recording said deed, the word "east," after the words and figures "thence north $72\frac{1}{2}$ degrees," was inserted in place of the word "west," and that the correct description of said land is as follows: Beginning at a point 2.72

chains north 71 degrees west from the quarter section corner between sections 26 and 35 (magnetic variation $11\frac{1}{4}$ degrees east), thence south 17 degrees east 10.15 chains to a black oak, thence north 60 degrees west 1.33 chains, thence north $72\frac{1}{2}$ degrees west 1.83 chains, thence north 57 degrees west 6.20 chains, thence north 75 degrees west 5.65 chains, thence north 82 degrees west 6.64 chains, thence north 21.22 chains, thence east 7.80 chains, thence south 10 degrees west 4.20 chains, thence south $10\frac{1}{2}$ degrees east 14.70 chains, thence south $86\frac{1}{2}$ degrees east 7.90 chains to the place of beginning, containing 23.65 acres, in sections 26 and 35, in township 15 north, of range 13 east, in said county. It is therefore ordered and decreed that the plaintiffs and their grantees, to whom they may have executed deeds in due form, are the owners of said land, in their petition first described, beginning at the southwest corner of the southeast one-fourth (S. E. $\frac{1}{4}$) of southwest one-fourth (S. W. $\frac{1}{4}$) of section twenty-six (26), township fifteen (15) north, of range thirteen east, of sixth principal meridian, thence north six (6) chains, thence east eight and ninety one-hundredths ($8\frac{90}{100}$) chains, thence south ten and one-half ($10\frac{1}{2}$) degrees east four and thirty-nine hundredths ($4\frac{39}{100}$) chains, thence south one and forty-four one-hundredths ($1\frac{44}{100}$) chains to the south line of section twenty-six (26), thence west nine and thirty-three one hundredths ($9\frac{33}{100}$) chains to the place of beginning, containing five and one-half ($5\frac{1}{2}$) acres, more or less.

"That said plaintiffs are the owners in fee simple of such portion of said land as they have not already lawfully conveyed, and that the grantees of said plaintiffs are the owners in fee simple of such portions of such land, respectively, as may have been duly conveyed to him, and the title of said plaintiffs and their said grantees is hereby quieted and confirmed.

"It is further ordered and decreed that the defendants Frank J. Kasper and Frank Shoull are the owners in fee

simple of the following described portion of the land here-inbefore described, and the title thereto is hereby quieted and confirmed in them: Beginning at the northwest corner of the southeast quarter of the southwest quarter of section 26, township 15 north, of range 13 east, thence south 14 chains, thence east 4.18 chains, thence north 14 chains, thence west 4.18 chains to the place of beginning, being 5.85 acres in said county.

"It is further ordered and decreed that the defendant, Andrew B. More, has no interest, right, title, or equity in or to said lands herein described, or to any part or portion thereof, and that he be and hereby is forever enjoined and estopped from making any claim to said land or any por-tion thereof, and that he pay the costs of this action; to which findings and decree the defendant excepts and ap-pealed his cause to the supreme court."

I find considerable difficulty in presenting, to my own satisfaction, the questions involved in this case. This dif-ficulty, if not caused by, is greatly augmented in, the fact that the original deed from Andrew B. More to Lucy A. Goodwill is not set out in the record, nor does it appear that the deed, or the record of it, was produced at the trial. The original deed appears to have been lost. It is not believed that, as a question of law, the production of the record was indispensably necessary upon the trial, for the reason that the execution and recording of the deed, as alleged in the petition, are admitted in the amended answer of the defendant More. There were probably important legal advantages obtained by the plaintiffs, or, at least, perplexing difficulties obviated, by refraining from offer-ing the record of the deed in evidence, and probably, as it was uncertain whether the mistake or error, sought to be corrected by these proceedings, was a mistake or error in the draughting of the deed, or in the recording of it, it was deemed expedient to withhold the record from the evidence; yet certain it is, that its production would

have assisted the inquiries of the court and insured an ear-
lier disposal of the case.    It is in evidence that this deed
was executed and acknowledged on December 25, 1857.
There was introduced in evidence a deed from Andrew B.
More and wife to Moses F. Shinn, executed July 3, 1857.
This deed described the land lying easterly of, or from the
easterly boundary of, a portion of the land claimed by the
plaintiffs.    This line commencing at the point A on the
plat of the lands introduced in evidence as Exhibit A, run-
ning S. 17° E. 10.15 chains to a black oak, marked B on
the plat, which point is testified to by witnesses on the
trial, and upon whose testimony we must rely for evidence
as to the contents of the deed sought to be corrected, as the
first boundary line set out in said deed.    According to the
same witnesses' testimony the next course of the same de-
scription is N. 60° W. 1.33 chains.    This course is claimed
to be correct, but at that point the difficulty as to the
description begins, in the deed to Mrs. Goodwill, as testi-
fied to.    The next course is thence N. 72½° E. 1.83 chains.
This would extend diagonally across the first course of
the description, and a little more than 90 chains into and
upon the land formerly deeded to Shinn, whereas the cor-
rect description, as claimed and satisfactorily shown, would
be thence N. 72½° W. 1.83 chains to the point D on said
line, thence N. 57° W. 6.20 chains to the point E, thence
N. 75° W. 5.65 chains to the point F, thence N. 82° W.
6.64 chains to the point G, thence N. 21 chains to the
point H, thence E. 7.80 chains to the point I, thence S.
10° W. 4.20 chains to the point J, thence S. 10½° E.
14.70 chains to black letter K, thence S. 86½° E. 7.90
chains to the place of beginning.    To follow further the
description, as contained in the Goodwill deed, we go back
to the erroneous course before described, and commencing
at the point marked with a red letter D on the plat, thence
N. 57° W. 6.20 chains to red E, thence N. 75° W. 5.65
chains to red F, thence N. 82° W. 6.64 chains to red G.

At this point the line turns due north, falling short of the point in the true description, marked black G, a distance corresponding exactly with the sum of the two distances from the black oak to the point C and from the point C to either point D. Taking up the description in the Good-will deed at the point marked with a red G, it runs due north 22 chains, striking the north boundary of the track as claimed by the plaintiffs, at red H on the plat, thence E. 7.80 chains to the point marked red I, thence S. 10° W. 4.20 chains to the point marked red J, thence S. 10½° E. 14.70 chains to the point marked with a red K, thence S. 86½° E. 7.90 chains.

It will thus be seen that the north boundary is the same in both descriptions, except as to the limits east and west, and that the east boundaries of the northern, or what we we will term the upright portion of the tract, are identical in the two descriptions, except that the south point of the line of the Goodwill deed is substantially the same distance east of the corresponding point in that which is claimed as the true description, as is the distance between the red G and the black G on the plat, and the last course carries us the same distance past and east of the place of beginning.

It appears from the record that on January 25, 1866, A. B. More and wife deeded to John H. Green twenty-three acres of land immediately east of what is designated the northern or upright portion of the land in controversy. The description of this land as contained in the deed of Green commences "at N. E. corner of the S. E. quarter of the S. W. quarter of section 26, township 15, thence W. 12.20 chains, thence S. 10° W. 4.20 chains, thence S. 10½° E. 14.70 chains, thence S. 86½° E. 10.30 chains, thence N. 19.26 chains to the place of beginning." In the convey-ance from More to Green there is also another tract con-veyed, described as "beginning at the S. W. corner of the N. E. ¼ of the N. W. ¼ of sec. 35, in the same township

and range, thence N. 18 chains 78 links, thence S. 82° E. 6 chains 64 links, thence S. 15° W. 18 chains 35 links, thence W. 1 chain 75 links to the place of beginning, containing six acres, more or less."

It will be observed that the north line or boundary of this piece, or the second course of the description, is identical with that part of the line of the tract in controversy as claimed by the plaintiffs and marked by the black line between the black letters F and G, leaving a narrow strip between the north boundary of this tract conveyed to Green and the west end of the south boundary of the tract described in the deed from More to Goodwill.

By reference to the plat it will be seen that if the northwest corner of the north or upright plat of the land is at the point marked by a red H, as claimed by defendant More, and not at the point of black H, as claimed by plaintiffs, then the land conveyed to Green would fall short in quantity about one-third, as the west boundary of it, as marked by the red line of the plat, would be about four chains further east than the west line called for in the description.

The defendant More, having been examined on the trial as a witness, testified upon cross-examination that he was the owner of the southeast quarter of the southwest quarter of section 20, township 15, range 13, at the time of the making of the deed to Mrs. Goodwill; and in reference to the deed which he had subsequently made to Green, stated that he did not intentionally or knowingly convey to him any land which he had previously conveyed; that he probably made two deeds to Green, but recollected of making one to him, and probably deeded to him fifty-eight or sixty acres, "he didn't recollect, the deeds would show;" that he intended to sell him what was in the deeds, no more and no less; that the same was also true in regard to Shinn, he intended to sell him whatever was covered by the deed, no more and no less; that in no case had he in-

tended to sell or to deed anything which he had previously
conveyed; that he did not know, as a matter of fact, that
what was to be conveyed to Mrs. Goodwill runs over into
the ground subsequently conveyed to Green ; that he did
not know that he claimed that it is correctly surveyed at
all; that when he made the conveyance to Mrs. Goodwill
he did not intend that the east line should run over some-
thing like 200 feet into the tract sold to Green.

Q. You intended, when you made your conveyance to
Mrs. Goodwill, that the east line should come square up to
the west line of the tract you subsequently sold to John
Green, didn't you ?

A. I think that is correct.

Q. And when you sold to John Green you intended his
west line to come square down and touch the east line of
the tract that you had previously sold to Mrs. Goodwill,
didn't you?

A. Well, I believe that was the intention.

Q. And the west line of the tract you sold to John
Green would come about to where John Green subse-
quently put up the fence, wouldn't it ?

A. I don't know where his fence is ; the description in
the deed will show.

Q. The west line of the piece you sold to John Green
would be about the place you pointed out to him where
the line would be, wouldn't it ?

A. Yes, I suppose it would.

He was also asked :

Q. In describing the Goodwill tract was there any in-
tention on your part to jog back to the east ?

A. No, sir.

Q. Over the tract previously sold to Shinn ?

A. No, sir.

Q. There was no intention of throwing a little wedge
piece in the Shinn tract ?

A. No, sir.

Q. If you owned that, and claimed to own it, why did you leave it in that kind of shape?

A. I never put it in that shape.

Q. Well, who did?

A. I don't know; somebody who didn't know much about surveying. My impression is that that is the true line; this line here (indicating, while examining the plat, the black line); and there is a stake which should be somewhere near Goodwill's G. That is the only surveying I ever did. We started there, at that time; I lived here somewhere; started over to the spotted tree, and then we came down to another spotted tree (B) and went to several other lines (E and F); we didn't know where the government lines were. This deed was made by claim club lines, and didn't have any reference to the section lines whatever.

Q. Your idea is that the true south line of the Goodwill tract is the black dotted line, and not the red line which would jog back over in here?

A. Didn't jog nothing about it. That dog's head of a thing, there, has no business there; there is a point, I am not positive, but I think *that* is the point (designating it on the plat).

Q. You claim the true south line should be the dotted black line running due west, and not jogging back at any time towards the east?

A. Running due west, or northwest.

Q. Due west, and not jogging back at any time towards the northeast?

A. No, sir; and there should be a stake running down here somewhere to an oak tree, and then across, perhaps, here, I don't know, to another oak tree down here, and there, to the place of mine. This is what Mrs. Goodwill claims; I want you to understand that.

This evidence sufficiently establishes the allegation of the petition that by a mistake in recording the deed, or in writing the description of the land intended to be conveyed,

the word *east*, after the words and figures "thence north 72½ degrees," was inserted in place of the word *west*, and that the true intent and purpose of the deed of Moore to Goodwill was to convey the land as hereinbefore stated and described : "Beginning at a point 2.72 chains north 71 degrees west from the quarter section corner, between section 26 and 35 (magnetic variation 11¼ degrees east), thence south 17 degrees east 10.15 chains to a black oak, thence north 60 degrees west 1.33 chains, thence north 72½ degrees west 1.83 chains, thence north 57 degrees west 6.20 chains, thence north 75 degrees west 5.65 chains, thence north 82 degrees west 6.64 chains, thence north 21.22 chains, thence east 7.80 chains, thence south 10 degrees west 4.20 chains, thence 10½ degrees east 14.70 chains, thence south 86½ degrees east 7.90 chains to the place of beginning, containing 23.65 acres, in sections 26 and 35, in township 15 north, of range 13 east."

The plaintiffs also introduced a deed from Lucy A. Goodwill to George G. Earle, executed August 24, 1874, conveying what has been designated as the north or upper portion of the land in controversy. Also a deed from Earle and wife to C. E. Hawver executed March 22, 1878, which, with the other lands, conveyed the same tract conveyed by Mrs. Goodwill to Earle. Also the record of the probate court of Douglas county, Nebraska, showing the probate of the last will and testament of Lucy A. Goodwill, deceased, with a copy of the will, from which it appears that Carrie E. Goodwill was made the sole legatee of the real and personal property of which her mother, Lucy A. Goodwill, died seized. Also a record of the same court showing the probate and record of the last will and testament of Carrie E. Hawver, late of said county, deceased, by which, after various specific bequests, she bequeathed to her husband, Samuel Hawver, all of her property of every kind whatsoever.

The record of the court below also contains the deed of

Samuel Hawver and Harriet L., his wife, to John Ainsfield and Marcus Rosenwaser and Andrew Rosewater, executed June 15, 1886, conveying the following described land: Beginning at the S. W. corner of the S. E. quarter of the S. W. quarter of section 26, township 15, range 13 east, thence north 6 chains, thence east 8.90 chains, thence south 10½ degrees east 4.39 chains, thence south 1.44 chains to the south line of section 26, thence west 9.33 chains to the place of beginning, containing five and one-half acres, more or less. Also a deed from Andrew Rosewater and wife to Frank Shoull executed January 13, 1887, describing the same lands as that last mentioned.

Neither of the parties, nor either of the grantors of the appellees, direct or remote, appear to have been in the actual physical possession of the land which ought to have been described, but was not, in the deed from More to Goodwill.

According to the bill of exceptions, this land consisted of brush and timber; that from a date shortly after the execution of the deed from More to Goodwill, the latter during her lifetime, and, after her death, her daughter and devisee Mrs. Hawver during her lifetime, and, upon her death, her devisee Hawver, up to a late period, occasionally sent persons in their employment to cut and haul wood from said land, and who did, as so employed, cut trees and timber for firewood and other purposes. There is no evidence that any portion of said land was ever enclosed, cultivated, or occupied otherwise than as above stated by Mrs. Goodwill and the Hawvers cutting trees and brush thereon. No act of ownership was exercised over any part of the land in controversy by the appellant since the fall of 1867, or the spring of 1868, and the evidence that any act of ownership was exercised by him after the date of the Goodwill deed is vague, indefinite, and unsatisfactory.

Counsel for appellants assume, and apparently take it as granted, that the deed from More to Goodwill was a quit-

claim deed, and was made without consideration. There is but little, and no satisfactory, evidence to be found in the bill of exceptions upon either of these points, and probably no such evidence was necessary, the pleadings having assumed to settle those two points. The plaintiffs, as will be seen by their petition, alleged that on the day stated the defendant, for a valuable consideration, by deed in due form, duly conveyed said real estate (having previously set out the description of it) with other land to Lucy A. Goodwill, under whom plaintiffs derive their title.

The appellant in his original answer neither admits nor denies the execution of any such deed, or of any deed, to Mrs. Goodwill (and of course does not state the character of the deed), and in his second, or amended, answer the only language used touching the nature of the deed is, that the deed made by defendant to Lucy A. Goodwill, referred to in plaintiffs' petition, was executed, delivered, and recorded in the year 1857. Taking the allegations of the petition with this language of the amended answer, it amounts to an admission by the appellant of having made to Lucy A. Goodwill a deed of the character and nature of that set out in the petition, of one upon a valuable consideration, and in due form of law.

The appellant, by his amended answer, set up as a defense the statute of limitations, and pleaded that the plaintiffs' cause of action arose more than ten years prior to the bringing of this suit.

Appellees, in their brief, say that this plea cannot be maintained, for the reason that the proof establishes the plaintiffs' claim of adverse possession for more than ten years. Also that the mistake in the description complained of was not discovered, nor was More's wrongful claim to the land made known, until two years before the bringing of this suit. It is true that it does not appear from the evidence that the mistake in the deed set out in the petition was discovered by anybody until a point of time

within the shortest limitation set by the statute, nor is there evidence of the discovery of any fact by the plaintiffs, or any of their grantors, which was calculated to put a prudent person upon his inquiry as to the existence of a mistake or error in the said deed, or which, if followed up, would have led to the discovery of such error.

Our statute of limitations places actions for relief on the ground of fraud in the list of those which must be commenced within four years after the cause of action shall have accrued, but it provides that the cause of action in such cases shall not be deemed to have accrued until the discovery of the fraud. (Sec 12, C. Code).

Actions for relief on the ground of accident or mistake are not specifically mentioned in the statute, but these three, fraud, accident, and mistake, have been always classed together as the three great fountains of equity jurisprudence. In 2 Story's Equity, at section 1521a, it is said: "The question often arises, in cases of fraud and mistake, and acknowledgments of debts, and of trusts and charges on land for payment of debts, under what circumstances, and at what time, the bar of the statute of limitations begins to run. In general it may be said, that the rule of courts of equity is, that the cause of action or suit arises when, and as soon as, the party has the right to apply to a court of equity for relief. In cases of fraud or mistake, it will begin to run from the time of the discovery of such fraud or mistake, and not before."

In the case of *Brooksbank v. Smith*, 2 Younge & Coll., 58, Baron Alderson said, * * * "Mistake is, I think, within the same rule as fraud. Here, therefore, the statute was not applicable, for the mistake was not discovered within six years before the filing of the bill."

The case of *Ormsby et al. v. Longworth et ux.*, 11 O. St., 653, is undoubted authority in this state, for, as has been often remarked, our statutes are adopted more nearly after the spirit of those of Ohio than of any other of the

elder states. I state from the syllabus: "In a case purely equitable, and not cognizable in a court of law, where, in an otherwise proper case, it is sought, on the ground of mistake, to reform and enforce an agreement for the conveyance of real estate, and the correcting of the mistake involves no change of possession, no disturbance of investments made by the party against whom the correction is sought, and leaves the enjoyment of the property to go on in harmony with the prior acts of the parties in interest, the lapse of time applied by courts of equity, in analogy to the statute of limitations, will be reckoned only from the time of the discovery of the mistake."

In the case of *McIntosh v. Saunders*, 68 Ill., 128, the court in the syllabus says: "In case of fraud or mistake, in equity, the statute of limitations will begin to run from the time of discovery of the fraud or mistake, and not before."

In *Crane v. Prather et al.*, 4 J. J. Marshall, 75, the premises were significant with those in the case at bar. There the chief justice, in the opinion delivered, after commenting upon the relation of courts of equity to the statute of limitations, stating views of the law in that behalf, generally entertained a half century ago, but which are not entertained by the courts of the present day, said: "Supineness and negligence will not receive countenance in a court of equity. But if a complainant shall have filed his bill within a saving time after his discovery of his claim to relief, and shall have made the discovery as soon as a man of ordinary diligence could have been expected, by the use of reasonable means, to have made it, he will not be barred merely because it might have been possible to have detected the cause for complaint sooner than it was ascertained. One of the most fatal effects of fraud is, that it conceals itself from its victims. If it should succeed in doing so until remedy for its perpetration should be barred by time, this alone being one of the injurious consequences,

and perhaps one of the aims of the fraud, should give the chancellor jurisdiction of the case, for the purpose of relieving from the effects of the delusion.

"The same reason does not apply with equal force to mistake. And it may be, and generally must be, difficult to prove, satisfactorily, when the mistake was discovered, and when it might have been ascertained by the exercise of ordinary vigilance. And hence, the equitable qualification of the legal limitation has not been applied as frequently to cases of mistake as to those of fraud. But it will apply in a proper case."

The rule was applied to that case and controlled it; and that case was followed by that of *Grundy's Heirs v. Grundy et al.*, 12 B. Mon., 269; *Adams v. Guerard*, 29 Ga., 651; *Smith v. Fly*, 24 Tex., 345; *Andrews et al. v. Gillespie*, 47 N. Y., 487; *Brooks et al. v. Harris*, 12 Ala., 557; *Ferris v. Henderson et al.*, 12 Pa. St., 49; *Emerson v. Navarro*, 31 Tex., 334.

In the case of *Parker v. Kuhn*, 21 Neb., 413, which was one of alleged fraud, and not of accident or mistake, this court held that "An action for relief on the ground of fraud may be commenced at any time within four years after a discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery."

A full consideration of the cases cited leads me to the conclusion that a case of relief from the effect of accident or mistake, like that at bar, comes within the same rule of limitation. It appears from the record that there has been no actual, physical occupation of the land in controversy by either of the parties to this action since the execution of the deed, the mistake in which is the foundation of this suit, occurred, until within a recent period, and at no time by the appellant; that, therefore, there is no possession to be changed by a rectification of the mistake, nor

does a correction of the mistake involve any disturbance of investments made by the party against whom the correction is sought; but such correction will leave the property to go on in harmony with the prior acts of all the parties in interest. The case is therefore within the prinples and equities of the decision in *Ormsby v. Longworth, supra.* The judgment of the district court is

                                                        AFFIRMED.

THE other judges concur.