W. P. FORSYTH, APPELLEE, v. MARTIN V. EASTERDAY ET AL., APPELLANTS.

FILED FEBRUARY 19, 1902.  No. 10,198.

1. Fraud: ACTION: LIMITATION: DISCOVERY. An action for relief on the ground of fraud is barred in four years after the cause of action accrues, but the cause of action is not deemed to have accrued until the discovery of the fraud.

2. Fraudulent Deed: RECORD: NOTICE: LIMITATION OF ACTION. The recording of a fraudulent deed is not of itself, under all circumstances, sufficient to charge all parties with notice of the fraud. When accompanied with circumstances sufficient to put a person of ordinary intelligence and prudence upon inquiry, which, if pursued, would lead to a discovery of the fraud, the statute begins to run from the recording of the deed, but not otherwise.

APPEAL from the district court for Johnson county. Heard below before STULL, J.  Affirmed.

Samuel P. Davidson, for appellants.

Lewis C. Chapman and F. L. Dinsmore, contra.

SEDGWICK, J.

The plaintiff and appellee commenced this action, in the nature of a creditors' bill, to subject certain property standing in the name of Margaret J. Easterday to the payment of a judgment held by the plaintiff against Martin V. Easterday.  It is alleged in the petition that the judgment was entered in the county court of Johnson county, Nebraska, at the January term, and that said judgment was transcripted to the office of the clerk of the district court January 27, 1898; that execution was issued thereon January 28th, and was returned wholly unsatisfied Janu-

ary 29th, and that there is now due the plaintiff on said judgment the sum of $900; that Martin V. Easterday is wholly insolvent.  It is further alleged that in October, 1891, Martin V. Easterday owned in his own right certain lands in Johnson county, Nebraska, and that he exchanged said lands with one Gremmitt, the consideration for said exchange being property owned by Gremmitt in Loup county, Nebraska; that in October, 1892, Easterday exchanged the Loup county lands with one Ellsworth for the property in Tecumseh which it is sought to reach by these proceedings; and that the deed to the Tecumseh property was made to the defendant, Margaret J. Easterday.  The plaintiff further alleges that he is a resident of California; that he does not know Ellsworth, and that he had no knowledge or means of knowing or ascertaining the facts concerning the conveyance of the Tecumseh property to Mrs. Easterday or the fraudulent intent of the defendants in having said property conveyed to her; that he had employed competent persons to make inquiries and investigations, and had himself made inquiries and investigations, in Tecumseh, where the defendants had resided for ten years, and had at all times been informed that Martin V. Easterday had no property whatever out of which he could collect his debt; that the defendant Martin V. Easterday had informed him that he possessed no property of any kind from which the debt could be paid and that during the four weeks just prior to the filing of his petition in this action he had discovered the fact that Martin V. Easterday was the real owner of the Tecumseh property standing in the name of Mrs. Easterday, and the fraudulent intent and purpose with which it had been conveyed to her.  The defendants filed a joint answer, in which they admit that the legal title to the land conveyed to Gremmitt stood in the name of Martin V. Easterday, but allege that, while such was the case, it was purchased with the money of Mrs. Easterday.  They admit the exchange of said lands for Loup county, Nebraska, lands and the taking of the title in the name of Martin V.

Easterday, but allege that Mrs. Easterday was the equitable owner of said Loup-county lands. They admit that in October, 1892, they exchanged the Loup-county land with one Ellsworth for the property in the city of Tecumseh described in plaintiff's petition, and that the title to the last-mentioned property was taken in the name of Mrs. Easterday for the reason, as is alleged, that her money and the proceeds of her property paid the entire price thereof, and deny that there was any fraudulent intent in any of the above-mentioned conveyances. For a further defense they make the following plea: "As a second and further defense, defendants allege that plaintiff had full knowledge of all the facts and circumstances surrounding all of the transactions mentioned above and which are referred to in his petition, as early as November, 1892, and more than five years have elapsed since said transactions took place, during all of which time the deeds showing said transactions and the consummation thereof, have been on record, and known by said plaintiff, and the alleged cause of action set up in plaintiff's petition, which is based upon the alleged fraud of these defendants, has long prior to the commencement of this suit, been barred by the statute of limitations, and for that reason plaintiff can not maintain this suit."

Shortly after the marriage of the defendants, Mrs. Easterday received some money from her mother. This she gave to her husband, who invested it in lands in Illinois, taking a deed in his own name. During his service as a soldier in the war of the rebellion this land was sold, and Mrs. Easterday purchased other lands with the proceeds, taking title in her own name. On the return of Mr. Easterday this land was sold, and the parties came west, where the money was invested in land near the city of Tecumseh; title being taken in the name of Mr. Easterday. This was in 1870 or 1871, and since that date Easterday has bought and sold and exchanged lands, taking title in his own name, engaged in the agricultural business, and done business generally, all the property handled and con-

trolled by him being in his own name. While it is true he
testified that all of the property which he has handled dur-
ing this long series of years was the proceeds of money
obtained from his wife, he also testifies that no account of
the amount received was ever kept, and no agreement out-
side of some indefinite understanding between them was
ever made, that she should be regarded as the owner of
any property standing in his name or of any interest
therein.  If the money which she advanced was anything
more than a gift, there is nothing in the record from which
we can ascertain with any degree of certainty the amount
she has advanced, and nothing showing any specific agree-
ment between them that this Tecumseh property was taken
in payment of any indebtedness due her from her husband.

We think the decree of the district court is amply sus-
tained by the evidence, and that the one question left in
the case is the question whether the plaintiff's action is
barred by the statute of limitations.  It will be observed
from the statement above given that the plaintiff obtained
the judgment which is the foundation of his bill in Janu-
ary, 1898.  The foundation of this judgment was a promis-
sory note made by Martin V. Easterday to Russell &
Holmes, dated January 17, 1887, and due one year after
date.  An action, therefore, could have been brought upon
this note in January, 1893.  The statute did not run
against it on account of payments made and indorsed
thereon; the last payment being under date of January
15, 1893.  The deed to the property in question was made
October 20, 1892, and recorded November 1, 1892.
In *Gillespie v. Cooper*, 36 Nebr., 775, it is said that "the
statute begins to run against a creditor from the discovery
of the fraudulent act on the part of his debtor, whether
the creditor's claim has been reduced to judgment or not."
It is urged that this is an erroneous statement of the law,
and ought to be overruled.  We do not find it necessary to
determine this question in this case.  An action for relief
on the ground of fraud is not barred until four years after
the discovery of the acts constituting the fraud, and the

question is whether the finding of the trial court that the
facts constituting the fraud were not discovered by this
plaintiff until within four years of the time of commenc-
ing this action is supported by the evidence. It is also
said in the syllabus of the opinion in *Gillespie v. Cooper,
supra,* "It seems that the fraud, within the meaning of
said section 12, is discovered when the fraudulent deed is
recorded in the county where the debtor lives." But this
is not in that case determined to be the law. The contrary
is the established rule in this state. In the case referred
to it is said in the opinion: "This suit was brought more
than four years after October 28, 1884. Now, when did
appellees discover the fraud perpetrated October 27, 1884,
within the meaning of section 12 of the Civil Code, as con-
strued by the courts? The parties all lived in the city of
Lincoln, in Lancaster county, Nebraska. The lots fraudu-
lently conveyed were situate in said county and city. The
fraudulent deed was recorded in said county and city Oc-
tober 28, 1884. Mrs. Cooper had failed in business and
was known to be insolvent. The fraudulent grantors re-
mained in possession of the property conveyed to Rich-
ards." The testimony in the case is then quoted at large,
covering about four pages of the report, and the court fur-
ther said: "Were these facts a discovery by appellees of
the fraud of October 27, 1884, within the meaning of sec-
tion 12 of the Civil Code and the construction placed
thereon by the courts? Part of that section is as follows:
'An action for relief on the ground of fraud, but the cause
of action in such case shall not [be] deemed to have accrued
until the discovery of the fraud.' The settled rule is that
the party defrauded must be diligent in making inquiry;
that means of knowledge are equivalent to knowledge; that
a clue to the facts, which, if followed up diligently, would
lead to a discovery, is in law equivalent to a discovery,
equivalent to knowledge." The court then reviews several
of its prior decisions, in all of which it appears that the
bare fact of the recording of the fraudulent deed is not of
itself sufficient to charge the defrauded creditor with no-

tice of the fraud. Among other cases so quoted from is *Wright v. Davis,* 28 Nebr., 479. In that case it seems that the deed which was alleged to be fraudulent was executed and recorded at least fifteen years before the commencement of the action to set the same aside. The court said: "It clearly appears that the conveyances were made and placed on record at a time when defendant was known to be insolvent, or at least just prior thereto; that defendant resided upon the land and made improvements thereon, and that plaintiff knew in the year 1876, or prior thereto, of such residence; that it was claimed by some of the family and was charged by the record with knowledge of the condition of the title as it then appeared." The court then quotes from the evidence showing that the plaintiff had knowledge of facts indicating fraud, which, if investigated, must have led him to a discovery of the fraud, and says: "It appears from all the evidence that plaintiff was fully aware of the financial condition of Davis and that the conveyances to his [Davis's] wife could not be otherwise than fraudulent. Or, if this can not be said to have been fully established, that by the most superficial examination suggested by facts within his knowledge he might have had full and complete knowledge of the condition of the title. As we have seen, this was sufficient to cause the statute to run." The rule adopted by this court is fairly expressed in the syllabus in that case, which is: "Where, soon after a conveyance of real estate to the wife of a debtor, he became and was known to be insolvent, and a creditor knew of the facts of such conveyance and insolvency, and knew of the occupation and improvement of the real estate by the debtor, having knowledge of such facts as would suggest the fraudulent character of the conveyance, and which, if pursued, would lead to a knowledge of the fraud, it was *held,* that the statute of limitations began to run under the provisions of section 12 of the Civil Code, and that the creditor's right to subject the property to the payment of his debt on account of the fraud would be barred in four years."

The allegations of the plaintiff in regard to his discovery of fraud within the few weeks prior to the commencement of this action, and the circumstances preventing his earlier discovery thereof, are fully supported by the evidence. Under such circumstances the mere recording of the deed to Mrs. Easterday from a stranger,—Mr. Easterday not then being in any way connected with the chain of title,—even if plaintiff was bound to take notice of such recording, could not have suggested fraud to the mind of any one. Married women have property rights distinct from those of their husbands, and the mere fact that a wife has received and put of record a deed of a piece of real property is not of itself a suspicious circumstance, or indicative of the payment of the purchase price therefor by her husband, unless his name appears in the chain of title. Wives may acquire property, both real and personal, by purchase or by descent, devise or the gift of any person except their husbands, in any of the various ways and upon any of the considerations permissible to other persons in like cases. The law presumes innocence. When it is known that a married woman has received a conveyance, from a person other than her husband, of a tract of land to which the latter never had title, the presumption is that she acquired it honestly and with her own means. That fact alone is not indicative of wrongdoing, and it can not reasonably be held to put her husband's creditors upon an inquiry which would lead to the discovery of a secret fraud toward which it does not point. It does not appear that the plaintiff had notice of any circumstances regarding this transfer, or in regard to the transactions between Mr. and Mrs. Easterday, indicating the fraudulent nature of the transactions, and sufficient to have put a reasonably cautious and prudent man upon inquiry that would have led to the discovery of the fraud perpetrated upon the creditors of Mr. Easterday.

The decree of the district court is

AFFIRMED.