MARY E. SWELEY, APPELLANT, V. JOHN W. FOX ET AL., APPELLEES.

284 N. W. 318

FILED FEBRUARY 17, 1939. No. 30481.

*Lamont L. Stephens* and *W. H. Line,* for appellant.

*R. H. Mathew, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action in equity to reform a real estate mortgage by inserting the description of an improved 80 acres which, it is claimed, was omitted therefrom by mutual mistake, and to reform the proceedings in a foreclosure case brought on said mortgage, or, in the alternative, to foreclose the mortgage as reformed. The defense was that the plaintiff was guilty of laches, that she did not offer to do equity, that the statute of limitations had run, and that there was no such clear, certain, and convincing evidence as is required to support a decree of reformation of an instrument. The trial court found for the defendants, and dismissed the plaintiff's supplemental petition for reformation. The plaintiff appeals on the ground that the judgment entered was not supported by the evidence, and is against the weight of the evidence, and is contrary to law.

The evidence discloses that prior to 1929 John W. Fox, defendant, owned 320 acres of land five miles south of Litchfield, being the southeast quarter of section 21 and the northeast quarter of section 28, the whole farm being four 80-acre tracts of land lying north and south. The two south eighties were grass or pasture land, but worth in 1930 about $30 to $35 an acre. The north eighty was all plow land, and part of it very good farming land, and it was at that time worth perhaps $50 an acre, and was mortgaged for $1,500. The fourth eighty, being the second one from the north, was good farm land, with all the improvements thereon, consisting of a dwelling-house, barn, chicken-house, hog-house, windmill, etc., and the entire farm of 320 acres was worth in 1930 around $20,000.

In March of 1929, when Fox was planning to buy the Criffield filling station at Hazard for $7,000, a loan from the Lincoln Trust Company was approved for $8,000 on the whole 320 acres, but the deal fell through, and he never completed the loan. Fox bought a filling station in Litchfield in July, 1929, for $2,775, and he borrowed $3,000 for six months of the First National Bank of Litchfield, D. W. Titus, president, giving the bank a mortgage on the two

south eighties and on the north eighty, but the mortgage did not include the 80 acres with the buildings. In reference thereto, Mr. Fox gave this answer: "Well, the reason I kept that eighty out was—didn't mortgage that eighty— was because that was my home, and my house and my barn was there, and I thought if I lost the rest of the stuff in this gasoline venture I would still have a little home left."

When its mortgage of $3,000 became due, the bank undertook to assist Mr. Fox to secure a new loan for him from Harry Sweley, husband of the plaintiff. Mr. Engleman, a bank employee, called Mr. Sweley on the telephone and talked with him about making the loan to Mr. Fox, and Mrs. Sweley testifies that he told her, after telephoning, that the bank wanted him to make a loan of $3,000 on the improved eighty and the two south eighties of grass land owned by Mr. Fox. He agreed to make the loan, and Mr. Engleman in the bank drew the mortgage to Mr. Sweley of $3,000 at 6 per cent., but has no recollection whatever of the transaction. The mortgage was dated January 31, 1930, and recorded February 4, 1930, and this mortgage was given on the same three unimproved eighties of land which had been mortgaged to the bank for $3,000, and did not include the eighty which was the home place. It is, therefore, undisputed that Mr. Sweley never at any time had a mortgage upon the home place.

Mr. Sweley died, and his widow, the plaintiff herein, secured the interests of the other heirs, and became the absolute owner of the mortgage, and, the same being in default, it was foreclosed, and a regular stay was taken, and then a moratory stay taken, and the sale was not confirmed and a deed issued to her until October 7, 1937.

After she secured the sheriff's deed, the plaintiff went to the county treasurer's office to pay her taxes, and for the first time learned that she did not own the improved eighty, being the second eighty from the north. A few days thereafter she brought this action to reform the mortgage, reform her foreclosure proceedings, or, in the alternative, to foreclose the mortgage as reformed.

The plaintiff, to establish her claim for a reformation of the mortgage given in 1930 on the ground of mutual mistake, relies upon the telephone conversation which she says she heard between Mr. Engleman and her husband about making the loan to Mr. Fox. The attorney for plaintiff, in offering this testimony, claimed it was *res gestæ* and part of the transaction. Judge Hostetler, trial judge, said it was hearsay, and was not in the presence of Mr. Fox, and was just what somebody told her, and he did not think it was *res gestæ*, but allowed the testimony to be given on the ground that in a trial to the court it would not be error.

Aside from this telephone conversation which plaintiff testifies Mr. Sweley had, not with the defendant Fox, but with an officer in the bank whose loan Mr. Sweley was taking up, the plaintiff places weight upon two applications for insurance upon his buildings. The first one is dated September 5, 1931, and the second one is dated October 1, 1936.

The first policy of insurance was taken out by Mr. Fox over 19 months after the mortgage had been given to Mr. Sweley. Mr. Fox went to the bank, asked for fire and tornado insurance on his buildings, and the clerk in the bank filled out the application. This was not done at the request of Mr. Sweley at all. The first application, dated September 5, 1931, was for $1,000 on the house and $1,000 on the barn, and there were a large number of questions to be answered and blanks to be filled in on the application. "Cash Value—Land and buildings $16,000. No. of acres in farm? 320." To the question, "How many acres on the farm are tillable?" he answered, "160." He stated in the application that he had owned the farm for 15 years, and that it was incumbered for $4,500. Counsel for defendant insists that all of these answers were true, and described the situation of the whole farm of 320 acres; that there was a first mortgage on the north eighty of $1,500, and that there was a $3,000 mortgage upon the three unimproved eighties of the farm, which made a total of $4,500 incumbrance upon the farm, but the application did not

say that the 80 acres where the buildings were located were incumbered, and counsel for defendant argues that, when a clerk in a bank is filling in all of the information needed in an application for a fire insurance policy, it is not made out as carefully as an instrument conveying title. When he came to the question, "Name and address of mortgagee?" he filled in the name, "Harry Sweley," and attached a "Loss payable clause" to him to the policy.

This insurance policy expired in 1936, which was after Mrs. Sweley had started proceedings to foreclose this mortgage of $3,000, and about that time Mr. Fox went to her to get her to sign papers so that he could get a loan through the Federal Farm Loan Association, and she asked him about renewing the insurance on the buildings, and she says that he told her that that would be up to her to get the insurance, and she went to Mr. Lang in the bank when she found the policy would expire on September 5, 1936, and Mr. Lang agreed to get Mr. Fox to sign an application for a new policy. He filled in the application blanks. "No. of acres in farm? 240. * * * Incumbrance—Is the land incumbered? Yes. If so, what amount? $3,000. * * * Name and address of mortgagee? Mary Sweley, Litchfield, Nebr.," and a loss payable clause was made to her.

Counsel for defense suggests that perhaps Mr. Fox was then willing that she should have insurance on the buildings as additional security for her mortgage, even though she did not have a mortgage on the land, provided she paid for the insurance; or perhaps he did not even think at all, but just signed the application as they made it out.

Plaintiff claims that she understood at all times that the mortgage given to Mr. Sweley covered the eighty with the buildings on, or she would not have paid $15 premium for the new policy.

It appears from the evidence that Mr. Fox endeavored to get a loan from the Federal Land Bank upon all four eighties of his farm; that they offered to loan him $4,000; that to clean up the balance on the $1,500 loan, which was a first mortgage on the north eighty, it did not leave him

sufficient to take up Mrs. Sweley's mortgage in full; that he went to see her and told her that, if she would sign up the papers required by the government, he could get the loan, and it would leave him short about $270 of paying off her mortgage, and that she refused to accept this deduction, although he promised to pay the balance later whenever he could get the money.

Section 20-212, Comp. St. 1929, provides a limitation of four years on all actions not thereinbefore provided, while section 20-207, Comp. St. 1929, sets out that an action for relief on the ground of fraud may be brought within four years, and that the cause of action shall not be deemed to have accrued until the discovery of the fraud. In Cobbey's Ann. Code, sec. 1011, he entitles this section, "Actions for trespass on real property." And Chief Justice Cobb, in *Ainsfield v. More,* 30 Neb. 385, 403, 46 N. W. 828, says: "Actions for relief on the ground of accident or mistake are not specifically mentioned in the statute, but these three, fraud, accident, and mistake, have been always classed together as the three great fountains of equity jurisprudence."

In *Wright v. Davis,* 28 Neb. 479, 44 N. W. 490, it was held that the fraud will be deemed to have been discovered when such facts are known as would naturally suggest such inquiries as, if followed up, would lead to such knowledge.

If the fraud or mistake ought to have been discovered, and would have been if reasonable diligence had been exercised by the plaintiff, the statute will run from the time such discovery ought to have been made, for a plaintiff cannot excuse delay in instituting suit of his cause of action if his failure to discover it is attributable to his own neglect. 17 R. C. L. 858, sec. 218; 44 A. L. R. 78, Ann.; 106 A. L. R. 1338, Ann.

In *Forsyth v. Easterday,* 63 Neb. 887, 89 N. W. 407, it was said: "The recording of a fraudulent deed is not of itself, under all circumstances, sufficient to charge all parties with notice of the fraud. When accompanied with circumstances sufficient to put a person of ordinary in-

telligence and prudence upon inquiry, which, if pursued, would lead to a discovery of the fraud, the statute begins to run from the recording of the deed, but not otherwise." This appears to be the general rule, but in *Wood v. Carpenter,* 101 U. S. 135, and in Iowa, Kansas, Missouri, and many other states it is held that constructive notice arising from recording imposes upon the creditor the duty to investigate, and charges him with knowledge of the fraud. See 76 A. L. R. 870, Ann.

To reform a written instrument on the ground of mutual mistake, the burden is on the party alleging mistake to prove that the written instrument does not fully or truly state the agreement or intention of the parties. The precise terms of the contract must be proved. There is always a presumption arising from the instrument itself that it sets forth correctly the agreement of the parties. 23 R. C. L. 365, sec. 65.

"Much stronger and clearer evidence is required than in an ordinary suit for damages; * * * reformation is never granted on a probability." 23 R. C. L. 367, sec. 67. In *Paine-Fishburn Granite Co. v. Reynoldson,* 115 Neb. 520, 213 N. W. 750, this court held: "To justify reformation of a written instrument requires proof that is clear, convincing and satisfactory." See *Wheeler v. Brady,* 126 Neb. 297, 253 N. W. 338, to the same effect.

Defendant Fox denies that he ever intended to give Sweley a mortgage on his home place. There was no evidence of any agreement between them. Sweley simply bought a mortgage from the bank which covered the same three eighties the bank had held a mortgage on.

The mortgage in possession of the plaintiff for all those years plainly described the three unimproved eighties. She verified her petition for foreclosure, which had the same description. The heirs assigned to her their interest in the same land. The decree of foreclosure, the notice of sale, which was published for five weeks, the confirmation, and the sheriff's deed, all set out definitely the same three unimproved eighties, which she could have seen at a glance,

yet she never discovered the alleged error until she went to pay the taxes after she got the sheriff's deed. We are constrained to believe there was laches in bringing the action.

An interesting question arises as regards the rights of the wife, for at the time John W. Fox gave the Sweley mortgage on the three unimproved eighties he was living with his wife, Fannie E. Fox, on their homestead on the improved eighty. There has been no evidence called to our attention which connects her in any way with the giving of any mortgage on her homestead.

In our opinion, the evidence is not clear or convincing that any mistake was ever made, much less a mutual mistake, and the court is convinced that the trial judge, who saw and heard the testimony of the witnesses, decided the matter correctly, and the judgment of the district court is hereby

AFFIRMED.