ARTHUR J. JAMESON ET AL., APPELLEES, v. L. R. GRAHAM, APPELLEE, IMPLEADED WITH C. R. BENNETT, APPELLANT.

66 N. W. 2d 417

Filed October 22, 1954. No. 33541.

*Dryden, Jensen & Dier, for appellant.*

*Munro & Parker, for appellees.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit in equity to set aside a mineral deed executed and acknowledged on July 16, 1941, for the reason that it was procured by fraud. The trial court found for the plaintiffs and entered a decree setting aside the deed and quieting the title to plaintiffs' lands as against the defendants. The defendant Bennett appeals.

The plaintiff Arthur J. Jameson was the owner of a quarter section of land in Buffalo County which was particularly described in the petition. The plaintiff Johanna Jameson was the wife of Arthur J. Jameson and the owner of Lots 25 and 26, which were accurately described in the petition. Arthur J. Jameson lived on his quarter section and his wife Johanna had lived in the city of Kearney with her daughter for many years.

On July 16, 1941, the defendant Graham called at the farm home of Arthur J. Jameson, seeking to purchase a gas and oil lease and a mineral deed to one-half of the oil, gas, and other minerals in and under his quarter section. The deal was consummated and, according to the evidence of Jameson, an oil lease and mineral deed were executed covering his quarter section only. The oil lease and mineral deed were then taken to the home of Johanna Jameson in Kearney, where she executed and acknowledged them. The mineral deed was filed for record on July 23, 1941. The plaintiff Jameson contends that Lots 25 and 26 were not included in the mineral deed when he signed it, that they were fraudulently included, and that the deed is therefore void. He testifies further that he was not permitted to read the documents at the time he signed them, that they were stacked one above the other at the time, and that he had no knowledge that he had signed

a mineral deed until 1950 and had no knowledge that Lots 25 and 26 were included in the mineral deed until November 1952. Jameson further contends that Graham was the agent of the defendant Bennett and that the fraud of Graham was that of Bennett. The plaintiff Johanna Jameson testified that she signed the papers after her husband had signed them and that her lands, Lots 25 and 26, were included in the description in the mineral deed.

The defendant Graham testifies that he called on Jameson at his farm and offered to purchase an oil lease and a mineral deed. The transaction was agreed upon and the papers typed up at the farm. He stated that Jameson gave him the legal description of his quarter section and got the description of Lots 25 and 26 from a county plat book that he had with him. He further testifies that the description of both tracts were typed in the deed at the Jameson farm home at that time. Graham testifies that the deed and lease were given to Jameson and that he supposed he read them. Jameson told him where his wife lived and that he would have to get her signature. Graham did not leave copies with Jameson, but informed him he would leave them with his wife. Jameson found copies of the instruments with his wife's papers after November 1952.

The record shows that Arthur Jameson and Johanna Jameson signed a receipt for $24 for "½ royalty sold to C. R. Bennett" on July 16, 1941, in which the real estate of both was described. A check payable to Arthur Jameson in the amount of $32 signed by Graham and bearing the date of July 16, 1941, is contained in the record. The check was cashed on July 17, 1941, and bears the notation "for oil & Gas Lease and ½ royalty." There is also a check in the record signed by Graham and payable to Johanna Jameson in the amount of $16, bearing the date of July 16, 1941. This check was paid on July 17, 1941, and bears the same notation as the check payable to Arthur Jameson. The evidence of

Graham and Bennett is to the effect that Graham was operating independently and was selling to Bennett some of the mineral deeds he acquired. The evidence does not sustain a finding that Graham was an agent of Bennett.

The defendant Bennett contends that the evidence is insufficient to sustain an action to set aside the deed on the ground of fraud more than 4 years after the alleged fraud took place. The rule is: An action for relief on the ground of fraud must be commenced within 4 years of the discovery of the facts constituting the fraud or of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which if pursued would lead to such discovery. Abels v. Bennett, 158 Neb. 699, 64 N. W. 2d 481. The present suit was instituted on November 24, 1952, more than 11 years after the alleged fraud occurred. Plaintiffs contend that it was not discovered until November 1952. The question is whether plaintiffs were put on such an inquiry that they ought to have discovered the fraud within the period of the 4 year statute of limitations. § 25-207, R. R. S. 1943. The requirement is that if more than 4 years have elapsed since the alleged fraud, the victim of it must allege and prove facts as to the failure to discover it, which entitles him to maintain an action by virtue of the fraud, notwithstanding the lapse of time, and he must allege and establish diligence in this regard. Abels v. Bennett, *supra*. The mineral deed was placed on record on July 23, 1941, 7 days after it was executed and delivered. This is a circumstance to be considered along with the other circumstances of the case in determining when the fraud was discovered. Sweley v. Fox, 135 Neb. 780, 284 N. W. 318; Abels v. Bennett, *supra*.

The evidence shows that Jameson had been engaged in the sale of real estate for many years. He was familiar with leases and deeds, and understood the purposes of each. Copies of the oil lease and mineral deed were

left with his wife, Johanna, and they had remained in her possession for more than 11 years. The mineral deed plainly stated the plaintiffs had sold, conveyed, and delivered to C. R. Bennett an undivided one-half interest in and to all of the oil, gas, and other minerals in and under the lands owned by both of the plaintiffs. The receipt for the amount paid to plaintiffs for the mineral deed recited "twenty Four Dollars in full for ½ royalty. Sold to C. R. Bennett this day on my farm of 240 acres." The 240 acres included the lands of both plaintiffs. Each plaintiff received a check for his share of the royalty sold. On each check was a notation on its face "for oil & Gas Lease and ½ royalty." Each endorsed his check and it was cashed and paid. Plaintiffs were able to read and their failure to take note of the evidence in their possession is not explained.

The fraud would have been discovered if reasonable diligence had been exercised. It would have been discovered within 4 years but for the negligence of the plaintiffs. A party seeking to avoid the bar of the statute of limitations on account of fraud must allege and prove that he used due diligence and that the failure to discover it within the statutory period was not due to his own negligence. If plaintiffs had remained in ignorance of the fraud without fault of their own, lapse of time would not defeat their action. Equity aids the diligent and not the negligent. The exercise of reasonable diligence and prudence on and following July 16, 1941, would have afforded plaintiffs, from the documents in their possession, all the information they secured in November 1952. Under such circumstances they are not entitled to time beyond the statutory period to bring their action, and it is barred by the statute of limitations. Abels v. Bennett, *supra*.

The judgment is reversed and the cause remanded with directions to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.