ETHEL RUBINSON ET AL., APPELLEES, V. NORTH AMERICAN ACCIDENT INSURANCE COMPANY, APPELLANT.

FILED JANUARY 12, 1933. No. 28338.

*Brome, Thomas & McGuire* and *Tinley, Mitchell, Ross & Mitchell,* for appellant.

*Harry Silverman* and *Raymond N. Klass,* contra.

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

On or about November 14, 1929, a policy of accident insurance was issued to Harry Rubinson by the North American Accident Insurance Company of Chicago. The insured died, on or about June 15, 1930, as the result of bodily injuries received in an automobile accident. His widow, Ethel Rubinson, as beneficiary under the policy, and O. L. Walker, to whom she assigned one-twentieth of the proceeds of the policy in suit, are the plaintiffs herein. They began this action in the district court for Douglas county against the defendant insurance company to obtain a reformation of the policy and, as so reformed, to provide that the payment of $10,000 for death by external, violent and accidental means generally shall include death as the result of injuries received in an automobile accident. Upon submission, the court found and decreed that the plaintiffs are entitled to a reformation of the policy to conform to the agreement of the parties, and judgment was thereupon entered for them and against the company in the sum of $10,000, with interest, and it was also ordered that the company pay plaintiffs' counsel $1,000 as attorney's fees. The defendant company has appealed.

On the application for the policy in suit provision is made that the following benefits will be paid by the company in the event of accident, namely: For loss of life, $10,000; for loss of both hands, $10,000; for loss of both feet, $10,000; for loss of one hand and one foot, $10,000; for loss of one hand, $2,500; for loss of one foot, $2,500; and for the loss of one eye, $1,500. But from a provision

in the policy relating to the $10,000 benefits, above described, it appears that the loss of life or injuries must have been incurred while the insured was riding in a public conveyance, presumably as a fare-paying passenger. In another part of the policy, however, provision is made for the payment of $100 to the beneficiary named therein for the loss of the life of the insured if caused by any accident "not otherwise covered by this policy." In pursuance of this last provision, a draft for $100 was sent by the company to the beneficiary herein as full satisfaction of the amount due under the policy, but this draft has never been presented for payment.

The record discloses that the insured was not versed in the use of the English language. His son, who was present when the solicitation of insurance was made, testified that the agent pointed out that the policy provided for a $10,000 death benefit payable upon the accidental death of the insured. It appears that the insured especially desired protection against loss of life or injuries from automobile accident and that the agent was so informed at the time. And when the policy was delivered, the agent again stated to the insured and his son that the policy was just as had been represented by him.

The company's agent testified that he referred the applicant to the provisions of the application and to the statements contained therein, and also to the policy. But it appears that a copy of the policy was not shown to the insured at the time he signed the application therefor. The agent testified that he informed the insured that the policy in suit was a general accident policy providing for the payment of a $10,000 death benefit and that it was in all respects as represented and would afford the same protection described on the back of the application. It also appears that the agent understood that the applicant desired insurance protecting him against injuries or loss of life in an automobile accident.

Upon receipt of the $100 draft by the plaintiff, one of her sons wrote to the company making inquiry as to why the draft was not in the amount of $10,000, which

was the sum the insured understood would be paid to his beneficiary in the event of his accidental death. At a later period, this witness wrote to the company for information in respect of the handling of an agency and, in response thereto, the company wrote: "Our 'Improved Premier' policy pays $10,000 principal sum for accidental loss of life, limbs or eyesight, and a benefit of $25 a week for loss of time from accidental injury or sickness, for a premium of only $10 a week, as shown on the inclosed circular."

Certain advertisements of the company contain the statement: "Which will your family want? In case of your accidental death, which would you rather give to your family—$10,000 cash—or sympathy?" Other advertisements clearly point out that the policy provides for the payment of $10,000 for accidental death and nowhere in such advertisements is it stated that, in order to recover the benefits described therein, the insured must have been riding in a public conveyance.

The policy in question was the first that had been written for the defendant company by the agent, but it is not shown that he was inexperienced, nor does it appear that he was not clothed with ample authority to represent the company. The agent had implied authority to take the application and to act for the company and, until the acceptance or rejection thereof by the company, the insured had the right to rely upon the authority of the agent in the premises. There appears to be no question but that the agent understood that it was protection against loss by automobile accident that was desired by the insured and that the insured understood he was obtaining full coverage of $10,000 for loss of life. "The application for insurance is usually given great weight in determining the intention of the parties in a suit for reformation." *Peterson v. Commonwealth Casualty Co.,* 212 Mo. App. 434. The knowledge and information acquired by the agent at the time the application was written was imputed to the company and, where the company accepted and retained the benefits obtained by

its agent, such acceptance amounts to a ratification by the company of the act of its agent, the presumption being that the agent communicated to the company the specific insurance desired by the insured. See *Sardo v. Fidelity & Deposit Co.*, 98 N. J. Eq. 22; *Norem v. Iowa Implement Mutual Ins. Ass'n*, 196 Ia. 983; *Nertney v. National Fire Ins. Co.*, 199 Ia. 1358.

The application and policy in suit were delivered to the insured in Iowa by the agent located there, and the residence of the insured at that time was in that state and it was in Iowa that his death occurred. It is contended that the contract of insurance is therefore an Iowa contract and that the substantive law of that state controls, although the procedure is determined by the law of Nebraska, the place of trial. The term "reformation" has been defined as follows: "Reformation is that remedy in equity by means of which a written instrument is made or construed so as to express or conform to the real intention of the parties when some error or mistake has been committed." 53 C. J. 906. And in 32 C. J. 977, it has been stated that the law of the forum, or the law of the place where suit is begun, governs matters relating to the remedies on the contract, regardless of where the contract was made or is to be performed. In this jurisdiction we have held:

"It is a general rule that, if, by inadvertence, accident, or mutual mistake, the terms of the contract are not fully set forth in the policy of insurance, it may be reformed so as to express the real agreement of the parties." *Robinson v. Union Automobile Ins. Co.*, 112 Neb. 32. See *Davis v. Highway Motor Underwriters*, 120 Neb. 734; *Pacific Mutual Life Ins. Co. v. Frank*, 44 Neb. 320.

In *Hartog v. Home Mutual Ins. Ass'n*, 196 N. W. 944 (197 Ia. 143) the court there held: "A mistake in an insurance policy, due to negligence of the insurance agent, acting within the scope of his employment, is satisfactory ground for reformation, since insured ordinarily relies upon the agent to properly set out the facts in the application."

We conclude that a policy of insurance providing for the payment of $10,000 upon the death of the insured by external, violent and accidental means may be reformed to include death as the result of injuries received in an automobile accident, where the evidence, as in the present case, is sufficient to show that the agent and the insured mutually understood the express coverage and protection desired by the applicant, but which was lacking in the policy and was not discovered until after the death of the insured. The court did not err in directing a reformation of the policy to conform to the agreement of the parties. Nor did the court, in view of the law applicable thereto, err in the allowance of attorneys' fees. The allowance for attorneys' fees in the district court having been ample, no further allowance will be made for services of counsel in the supreme court.

AFFIRMED.