**HERZBERGS, Inc., v. OCEAN ACCIDENT & GUARANTEE CORPORATION, Limited.**

**No. 3286.**

District Court, D. Nebraska, Omaha Division.

Nov. 14, 1941.

Webb, Beber, Klutznick & Kelley, of Omaha, Neb., for plaintiff.

Kennedy, Holland, DeLacy & Svoboda, of Omaha, Neb., for defendant.

DONOHOE, District Judge.

This cause was heretofore decided in this court, and judgment was rendered in favor of the plaintiff in the sum of $10,-494.97 and interest. An appeal was prosecuted to the Circuit Court of Appeals, and judgment of this court was reversed. 100 F.2d 171.

Thereafter, the plaintiff sought and obtained leave of this court to file an amended petition. The amended petition, so filed, was in all respects, with few immaterial exceptions, identical with the original petition first filed. The only consequential difference was in the prayer, which asked first for a reformation of the contract, and then for judgment.

The filing of this amended petition was over the objection of the defendant, and certain other proceedings were had which we need not notice. The defendant thereupon answered and the cause came on for trial upon the amended petition of the plaintiff, the answer of the defendant, and the evidence. Arguments of counsel, both written and oral, have been duly considered.

The vital and material issues as so presented in our view are:

First. Have the matters now presented been heretofore adjudicated by the decision of the Circuit Court of Appeals?

Second. If the matters have not been adjudicated, are the facts so clear, cogent, convincing and satisfactory as to warrant or entitle the plaintiff to a reformation?

■ On the first consideration, we are presented with the fact that the allegations of the claim originally filed and the claim now presented are to all intents identical, with the added prayer for reformation. The order of the Circuit Court was "The judgment below is reversed, and the cause remanded to the District Court for further proceedings not inconsistent herewith". In view of the well-established rule of the federal courts, "that an adjudication by a Federal Court is conclusive of all questions, both law and fact, upon which rights of parties depend, or those which might have been determined, as well as those which were" (Badger Dome Oil Co. v. Hallam, 8 Cir., 99 F.2d 293; Dickinson v. Orr et al., 8 Cir., 94 F.2d 536) might the matter now presented have been determined with the question which was presented and was determined?

■ In considering this question, we must first decide whether it is the same claim or a new or separate claim. If it is a new or separate claim, then it is barred by the Statute of Limitations, for more than five years have elapsed since the cause of action arose prior to the filing of this amended petition. Grand View Bldg. Ass'n v. Northern Assurance Co. of London, 73 Neb. 149, 102 N.W. 246; Sweley v. Fox, 135 Neb. 780, 783, 284 N.W. 318; Hensley v. Chicago, St. P., M. & O. Ry., 126 Neb. 579, 254 N.W. 426. It is our thought that it is not a new or separate claim or cause of action, and it was upon that theory that we heretofore overruled the motion to dismiss, or objection to the filing of the amended petition, on the ground that the claim was barred by the Statute of Limitations. Under the provisions of Rule 15(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, any amendment would relate back to the date of the original pleading, but to do so, it must necessarily arise out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, according to the language of the rule. By Rule 8(a) of the Rules of Civil Procedure, it is provided that after a short and plain statement of the claim, a demand for relief shall be made, and that relief in the alternative, or of several different types, may be demanded, and by Rule 54(c), it is provided "every final judgment (except by default) shall grant the relief to which the parties in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleading". Now there is not any doubt but that in the original petition, the plaintiff might have asked in the alternative for a reformation of the contract. It failed to do so. This court upon a hearing in that cause entered judgment in favor of

the plaintiff. We thought that the plaintiff was entitled to judgment on the contract as written. In that the Circuit Court of Appeals found and held that we were in error, but if the plaintiff was entitled to reformation, it might have obtained that relief in the Circuit Court under the provisions of Rule 54(c), as we read and understand it. Consequently, if we are to adhere, as we do, to the holding of the Circuit Court, and which is also the holding of the state court, that an adjudication by a federal court is conclusive of all questions of both law and fact upon which the rights of the parties depend, which might have been determined, as well as those which were, we must hold that the matter now presented is res adjudicata.

■ As to the second proposition presented—that is whether under the facts and allegations of the claim the plaintiff is entitled to a decree of reformation, we are first confronted with the question of whether the decisions of the national courts or the decisions of the state courts shall govern our consideration. The holding in the Erie R. Co. v. Tompkins case, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, was that the decisions of the state court should control in matters involving substantive law. The plaintiff is here seeking a reformation of a contract, and such proceedings have been held to be remedial and therefore governed by the law of the forum.

■ In the case of Rubinson et al. v. North American Accident Insurance Co. of Chicago, Illinois, 124 Neb. 269, 246 N.W. 349, involving an Iowa contract (a reformation proceedings), the court held that the proceedings were remedial, and that the law of Nebraska applied rather than the law of Iowa. In support of its holding the court cited 53 C.J. 906 and 32 C.J. 977. This question, however, need give us but little concern, for upon an examination of the decisions, we find but little consequential difference between the law as announced in the federal courts and by the Supreme Court of Nebraska. Where any differences appear, they are inconsequential. The well-reasoned and considered opinions of the Supreme Court of Nebraska are we think fully in accord with the decisions of the national courts, and the overwhelming weight of authority is that in view of the force and effect which must be given to a written instrument before a reformation may be had, the evidence warranting must be clear, satisfactory and convincing. The law has been but recently announced by the Supreme Court of Nebraska in the case of Beideck v. National Fire Insurance Co., 296 N.W. 893, as follows:

"In an action for reformation of a written instrument, the burden rests upon the moving party of overcoming the strong presumption arising from the terms of the written instrument. If the proofs are doubtful and unsatisfactory, and if there is a failure to overcome this presumption by testimony entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties.

"Where the evidence, in an action for reformation of a written instrument, is sharp and irreconcilably conflicting, it becomes necessary to apply the well known rule of equity that the evidence must be clear, convincing and satisfactory, and in consequence deny a reformation."

In the opinion will be found a citation of the leading Nebraska cases.

Among the cases cited, Sweley v. Fox, 135 Neb. 780, 284 N.W. 318, the court in its opinion, among other things, said: "Much stronger and clear evidence is required than in an ordinary suit for damages. Reformation is never granted on a probability."

■ Moreover, it has been repeatedly held that no representations, promises or agreements made, or opinions expressed, in the previous parol negotiations as to the terms or legal effect of the written agreement can be permitted to prevail over the plain provisions and just interpretation of the contract, in the absence of artifice or fraud, causing concealment, or preventing the complainant from reading the instrument. New York Life Ins. Co. v. McMaster, 8 Cir., 87 F. 63, a comprehensive opinion written by the late Judge Walter H. Sanborn. In this opinion, the judge points out and cites the authorities to the effect that the representation must pertain to a material fact rather than a question of law relating to the construction of the contract.

In the case of Sun Co. v. Vinton Petroleum Co., 5 Cir., 248 F. 623, the court in its opinion said: "Proof to establish a mistake in a written contract is to be received with great caution, and where the alleged mistake is denied, should never be

made the foundation of a decree variant from the written contract, except it be of the clearest and most satisfactory character, sufficiently cogent to satisfy the mind of the Court that the writing does not express what was intended by the parties, not merely the one who seeks a reformation, and what it was they intended the writing should express."

The court cites with approval the following from the opinion of Circuit Judge Thayer in the case of Travelers' Insurance Co. v. Henderson, 8 Cir., 69 F. 762: "The rule referred to is so well settled that it may be safely asserted that a Court of Equity has no right to correct an alleged mistake in a written agreement on the strength of testimony, purely oral, if the testimony is to such extent uncertain, equivocal or contradictory as to leave the fact of mistake open to doubt. Moreover, a Court of Equity ought to be especially cautious in altering the provisions of a written contract, where it has been in force for a considerable period before an attempt is made to reform it, and the parties thereto have in the meantime had ample opportunity to become acquainted with its provisions, and an event has also occurred which renders a change in the terms of the contract of vital importance to the person who is seeking to reform the instrument."

In the case of Bailey v. Lisle Mfg. Co., 8 Cir., 238 F. 257, Judge Sanborn again stated the law in the following language: "The purpose of a written instrument is to furnish a record of the terms of the agreement of the parties, not easily impeached, and thereby to avoid subsequent disputes and conflicting testimony and claims regarding its terms and their meaning. To accomplish this purpose, and to prevent such disputes from annulling written agreements, two rules have been firmly established in equity: first—that the burden is on the complainant to prove the mutual mistake, or the mistake of one party and the deceit, fraud or inequitable conduct of the other, upon which he relies for a modification or avoidance of the contract; and second—that in view of the written record of the terms of the agreement made at the time, a preponderance of the evidence is insufficient, and nothing less than evidence that is plain and convincing beyond reasonable controversy will constitute such proof as will warrant a modification or reformation of a written agreement."

Do the facts presented in this case meet the requirements of the law as stated? A general review of the testimony here will serve no good purpose. Certain outstanding facts and circumstances which I shall enumerate, gathered from the testimony, will suffice to determine our decision.

The original policy of insurance was issued on the 21st of October, 1924. At a later date there was presented to Mr. M. Herzberg the malpractice endorsement now involved to be made a part of the contract, and thereupon Mr. Herzberg, after reading the proposed endorsement, accepted the same over his written signature. It was thereupon attached, and it is stipulated became and ever since has been a part of the contract. In his deposition, Mr. Herzberg answered in response to the question:

"Will you tell us, Mr. Herzberg, what the conversation was, if there was any conversation, at the time this malpractice endorsement was brought to you?"

"It is pretty hard to recall an exact conversation. The substance of the conversation at the time was that the malpractice rider would not affect our store inasmuch as we didn't employ doctors or druggists in any of our departments, or the departments that we leased."

On cross-examination, he stated that the party delivering the endorsement asked him to read it over and to sign it, which he did, and that the endorsement was attached to the policy at that time. The deposition was taken on the 16th day of August, 1940. In many respects, there is a sharp conflict in the testimony of Mr. Herzberg and the agents of the defendant, who delivered the endorsement. According to the evidence, no writing or memorandum was made at the time of the transaction. The parties are now testifying from memory. It is not made to appear from the evidence that this malpractice endorsement had any application to any of the other departments in the Herzberg store, other than the beauty parlor, and the reformation now asked for in effect is that the court by its decree shall eliminate and obliterate this endorsement from the contract.

None of the witnesses undertake to state definitely the conversation which was had at the time the rider was attached to the policy, nor does there appear a very clear or satisfactory statement of the substance of the conversation. Conclusions rather than the statements are mostly made

and relied upon. In a deposition taken and introduced in the former hearing in this case, in response to a question propounded by counsel for the plaintiff, the witness, Mose Herzberg, answered as follows:

"Q. Do you recall what the conversation was that took place between you and the Greenberg boys, or either or both of them, regarding this rider? A. Well, I read over the rider, and from what I could get from it it didn't vary the terms of the policy and in my conversations with them, I didn't see any reason to change my mind along those lines."

From this statement on the part of the witness for the plaintiff, it would seem that it was merely a case of a misinterpretation of the language of the contract rather than any mistake of fact or misrepresentation. He read over the contract, and from his interpretation believed that it covered the loss in this case. This court too in the former trial, after studying the contract, so interpreted it, but we were both found to have been mistaken. To warrant a reformation, there must be a mistake of fact rather than a question of law relative to the construction of the contract, as was held in the case of New York Life Ins. Co. v. McMaster, supra. The situation that presents itself is simply this. We have on the one side a written instrument duly executed between the parties to this action, just as definite and certain today as it was when it was executed. On the other hand, we have testimony of witnesses concerning statements orally made more than sixteen years ago. The testimony does not purport to show the exact conversation, but is mostly made up of conclusions and evasions of the question repeatedly asked for a statement of the conversation which was had at the time of the execution of the contract. It is but natural to expect nothing more. Frailties of mind and weaknesses of memory are such as not to be trusted after so many years in a matter of such importance as we are now considering, even though the testimony had been more definite and in detail. The Legislature of Nebraska, recognizing the uncertainty of memory after a lapse of time, saw fit to enact a statute providing in substance that after six months shall have passed no testimony should be received to prove a nuncupative will, unless the words or the substance thereof were reduced to writing within six days after they were spoken. 30-207, Compiled Statutes 1929.

■ Aside from the other reasons assigned, lapse of time, if nothing more, has destroyed the weight and worth of the testimony. Consequently, we can only conclude that the evidence upon which the plaintiff relies is neither clear, cogent, convincing or satisfactory.

We have been prompted in examining the evidence and in making this finding, notwithstanding our prior finding and holding that the matter now presented is res adjudicata, from the fact that counsel for the plaintiff has urgently insisted that this feature of his case never had the consideration or determination of any court; that he failed to present the matter to the Circuit Court due to the fact that the present rules of federal procedure had but recently been adopted, and that he, with other members of the bar, were at that time unfamiliar with many of their provisions; that he had overlooked the provisions of the rules which we have cited above, and for that reason did not invite the consideration of the Circuit Court on this phase of the case, and that if his client was now to be denied a right to present this question, it would in effect work a miscarriage of justice. With this in mind, we have seen fit to consider and decide the case on its merits, which may be helpful in the event that it should be found that our conclusion on the question of res adjudicata was erroneous, and the plaintiff would thus be enabled to secure a review by the appellate court.

The action of the plaintiff will now be dismissed. Exceptions will be noted. Attorney for the defendant is requested to revise his requested findings of fact and conclusions of law in conformity with this memorandum.