Donald L. ATKINS, Appellant,

v.

SCHMUTZ MANUFACTURING COMPANY, Incorporated, Appellee.

No. 11566.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 12, 1968.

Decided Sept. 10, 1968.

James A. Eichner, Richmond, Va.
(George E. Allen, Jr., and Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellant.

Frank O. Meade, Danville, Va. (Meade, Tate & Meade, Danville, Va., on brief), for appellee.

Before WINTER and CRAVEN, Circuit Judges, and KELLAM, District Judge.

WINTER, Circuit Judge:

Plaintiff appeals from a summary judgment entered for defendant on the ground that plaintiff's action was barred by the Virginia statute of limitations. In the limited role that we occupy in the exercise of diversity jurisdiction, we are constrained to agree, and we affirm the judgment.

Plaintiff was injured on June 22, 1961, at South Boston, Virginia, when he became entangled in a machine manufactured and sold by the defendant. His injury necessitated amputation of both of his feet and he spent a long period of time in various hospitals and rehabilitation centers. Because he believed that the defendant was negligent in the design and construction of the machine which so severely and permanently injured him, he concluded to pursue his rights against the defendant.

The defendant's only place of business was and is in Louisville, Kentucky. Virginia had no "long-arm statute" until 1964.[1] Thus, plaintiff, at the time he initially sought to institute suit, reasonably concluded that the defendant could not be sued in Virginia. Suit was brought in the United States District Court for the Western District of Kentucky on June 19, 1963. The suit in Kentucky was brought more than one year, but three days less than two years, after the date of injury. The Virginia statute applicable to the plaintiff's alleged cause of action prescribes two years as the period of limitations, 2 Code of Virginia (1957 Repl. Vol.) § 8–24; the comparable period under Kentucky law is one year, K.R.S. § 413.140.

1. Such a statute is now in effect. 2 Code of Virginia (1966 Cum.Supp.) § 8–81.2.

At the time plaintiff brought suit in Kentucky, Kentucky decisions were understood in the federal courts to hold that in a suit filed in Kentucky, based upon a cause of action arising in another state, "the statute of limitations of another state, if longer, is applicable." Collins v. Clayton & Lambert Manufacturing Co., 299 F.2d 362, 364 (6 Cir. 1962); Koeppe v. Great Atlantic & Pacific Tea Co., 250 F.2d 270 (6 Cir. 1957); Burton v. Miller, 185 F.2d 817 (6 Cir. 1950). However, while plaintiff's suit was pending in the Kentucky district court, the Kentucky Court of Appeals held that in such cases the Kentucky one-year statute of limitations would prevail over a longer period of another state. Seat v. Eastern Greyhound Lines, Inc., Ky.; 389 S.W.2d 908 (1965). And it also decided that this rule should be applied retrospectively. Wethington v. Griggs, Ky., 392 S.W.2d 56 (1965).

Thereafter, defendant filed a motion for summary judgment on the ground that suit was barred in Kentucky. The motion was granted by the district court and affirmed on appeal. Atkins v. Schmutz Mfg. Co., 372 F.2d 762 (6 Cir. 1967). Certiorari to the Supreme Court has been denied. Atkins v. Schmutz Manufacturing Co., Inc., 389 U.S. 829, 88 S.Ct. 92, 19 L.Ed.2d 86 (1967).

The instant case was filed in the United States District Court for the Western District of Virginia, on March 13, 1967, almost six years after the injury occurred, but before the mandate of the United States Court of Appeals for the Sixth Circuit had issued. By motion for summary judgment, defendant asserted that the Virginia two-year statute of limitations barred plaintiff's suit. Finding that plaintiff could not fit himself into any of the instances in which Virginia suspends the running of the statute, the district judge granted the motion. We agree that plaintiff may not maintain the action.

Virginia suspends the running of the statute for varying periods when the plaintiff is under the disability of infancy or insanity, when the plaintiff has died, when there is delayed qualification of plaintiff's personal representative and when suit is prevented by the defendant. 2 Code of Virginia (1957 Repl.Vol.) §§ 8–30; 8–31; 8–32; 8–33. None of these instances of suspension is applicable. Section 8–34 is the only remaining suspension statute, and its text is set forth in the margin.[2]

Section 8–34 (known as § 5826 in the Code of 1919) was judicially construed in Jones v. Morris Plan Bank of Portsmouth, 170 Va. 88, 195 S.E. 525 (1938). There, the plaintiff to avoid the bar of limitations argued that there should be excluded from the limitation period the fourteen months during which there was pending in the Circuit Court of the City of Suffolk a suit by him against the same defendants for the same alleged cause of action for malicious abuse of civil process which had been finally dimissed for lack of venue properly pleaded. In rejecting the contention, the Supreme Court of Appeals said this about the statute:

"An analysis of our statute (section 5826) shows that in only four instances is there a suspension of the

2. "§ 8–34. Further time given when suit abates or is defeated on ground not affecting the right to recover.—If an action or suit commenced within due time in the name of or against one or more plaintiffs or defendants abate as to one of them by the return of no inhabitant or by his or her death or marriage, or if in an action or suit commenced within due time judgment or decree for the plaintiff shall be arrested or reversed upon a ground which does not preclude a new action or suit for the same cause, or if there be occasion to bring a new action or suit by reason of the loss or destruction of any of the papers or records in a former suit or action which was in due time; in every such case, notwithstanding the expiration of the time within which a new action or suit must otherwise have been brought, the same may be brought within one year after such abatement, or such arrest, or reversal of judgment or decree, or such loss or destruction, but not after."

statute of limitations by reason of the pendency of a former suit brought in due time. These are: (1) Where such suit abates 'by the return of no inhabitant,' that is, where the writ is not served for that reason; (2) where the suit abates by reason of the 'death or marriage' of a party; (3) where, after the plaintiff has obtained a judgment or decree in his favor, it is 'arrested or reversed upon a ground which does not preclude a new action or suit for the same cause'; and (4) where 'there be occasion to bring a new action or suit by reason of the loss or destruction of any of the papers or records in a former suit or action which was in due time.'

None of these provisions applies to the plaintiff's case. There is no saving provision where a suit, such as that of the plaintiff here, was brought in the wrong forum or was dismissed otherwise than upon the merits." 195 S.E. 526–527.

See also Manuel v. Norfolk & Western Ry. Co., 99 Va. 188, 37 S.E. 957 (1901).

As significant as the holding and what was said was the approach of the Court in that case. The Court treated as absolute the bar contained in § 8–24 unless and until plaintiff could bring himself specifically into one of the instances of suspension of the bar elsewhere provided in the statute. In that case, the plaintiff could not, any more than can the plaintiff in the instant case, and hence his suit was held barred. In this connection, the Court in the *Morris Plan Bank* case deemed significant, as do we, that when a suit is for wrongful death (as distinguished from personal injuries), Virginia

law suspends the period of limitations during the pendency of any action subsequently abated or dismissed without a determination of its merits. 2 Code of Virginia (1957 Repl.Vol.) § 8–634. The presence of this provision in suits for wrongful death makes its absence in suits for personal injuries strong evidence that Virginia would not permit suspension of the limitation period in the instant case.[3]

Citing Burnett v. New York Cent. R. Co., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed. 2d 941 (1965), plaintiff argues that pendency of the action in Kentucky tolled the Virginia statute.[4] *Burnett* held that a timely state action under the Federal Employers' Liability Act dismissed for lack of proper venue tolled the Act's three-year period of limitations until the state court order dismissing the action became final by expiration of the time for appeal or the entry of final judgment on appeal; hence, a federal suit, filed eight days after dismissal of the state action, was not barred. Although the *Burnett* case concerned limitations under the Act and presented a question different from that presented here, plaintiff stresses its broad statements that statutes of limitations are intended to promote justice by preventing the revival of claims which have been allowed to slumber until evidence has been lost, and that the policy of repose is frequently outweighed where the interests of justice require vindication of a plaintiff's rights. The *Burnett* case did contain such language and we are in full accord with it. Indeed, we are in full accord with the observations of the Sixth Circuit that the equities of this case

---

3. The parties call to our attention House Bill 744, introduced into the 1966 session of the Virginia General Assembly, which would have tolled the statute for action timely instituted "within or without the State", but "dismissed otherwise than upon the merits of the cause of action." The bill passed the House, but died in the Senate Committee. Because of the paucity of legislative materials we cannot determine if the bill was permitted to die because it was thought

unnecessary, or because it was thought undesirable. If for no other reason, the history of the bill is thus of minimal aid.

4. The Kentucky suit was filed three days before the expiration of two years from the date of the accident. The Virginia suit was filed within three days after the issuance of the mandate by the United States Court of Appeals for the Sixth Circuit.

"strongly favor appellant" (372 F.2d 764) and of the district judge below that the argument that plaintiff should prevail on the point in issue "is appealing to this court." In the instant case, the pendency of the Kentucky litigation would certainly satisfy any legislative purpose to guard against slumbering claims and would have provided ample opportunity for discovery and preservation of relevant evidence.

██ But the short answer is that we do not have before us a federal statute of limitations on which we are free to apply the holding or the rationale of the *Burnett* decision. We have a state statute to which we must apply state decisional law to the end that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[5] We cannot read the Virginia statutes or the *Morris Plan Bank* case as permitting plaintiff an opportunity to show if his claim of negligence on the part of defendant is meritorious.

We find no merit in plaintiff's argument that we are free to reexamine § 8–34 under federal law because this case presents a federal question—whether plaintiff has been denied due process of law because of the deprivation of a trial on the merits. If plaintiff has been denied due process of law, that deprivation occurred when the Kentucky district court under the *Erie* doctrine applied Kentucky's retroactive state construction of state law. Although not explicitly,

that issue was decided implicitly against plaintiff in his appeal to the Sixth Circuit. We would be unwarranted in entertaining a collateral attack on the judgment of the Sixth Circuit.

Affirmed.

CRAVEN, Circuit Judge (dissenting):

I regret that I am unable to persuade the court that we may faithfully follow the *Erie-Guaranty-Byrd-Hanna*[1] doctrine without necessarily denying this plaintiff a trial on the merits. If we were deciding this case after *Erie* and *Guaranty* but before *Byrd* and *Hanna,* I would agree, albeit reluctantly, that the result is compelled. It would be difficult, indeed, to distinguish *Guaranty,* involving as it did a state statute of limitations, without the light shed by *Byrd* and *Hanna.* The simplistic test of *Erie* (substance-procedure) and the mechanistic test of *Guaranty* (outcome) have undoubtedly survived *Byrd* and *Hanna,* but have been so altered that Mr. Justice Harlan, concurring in *Hanna,* concludes that the Supreme Court has "not succeeded in articulating a workable doctrine governing choice of law in diversity actions." More specifically with respect to the problem before us—the application of a state statute of limitations— Professor Charles Alan Wright concluded, even before *Hanna,* that under the Constitution (1) only the state can say what local tort duties are to be imposed within the state; (2) that only the federal government can say how the federal courts are to administer their proceedings; and (3) that it is a difficult and doubtful question whether state or federal law should control how promptly a suit must be brought in a federal court to vindicate a state-created right.[2] What

---

5. It should be noted that the *Guaranty Trust* case decided that the now familiar *Erie* rule was applicable to state statutes of limitations in diversity cases.

1. Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Byrd v. Blue Ridge Elec. Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d

953 (1958); Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Hereafter, these state-law-in-the-federal-courts cases will be referred to simply as *Erie,* except as indicated.

2. Wright, Federal Courts § 56 at 198. Professor Wright assumes that *Erie* rests on its avowed constitutional basis despite much commentary to the contrary. See id. § 56.

seemed so clear after *Guaranty*[3]—that a federal court must mechanistically apply a state statute of limitations—is now, as Professor Wright suggests, in the shadow zone. If there is room for doubt that the federal court must apply the Virginia state statute of limitations, it would seem to me an a fortiori proposition that there ought to be considerable doubt about the very narrow issue before us: whether, assuming the application of the two-year Virginia statute of limitations, it may have been tolled by the commencement of the Kentucky diversity action. Finally, if I am wrong on both counts, and it be assumed that we must not only apply the two-year Virginia statute but also apply the law of Virginia with respect to the tolling of it, I am strongly of the opinion that we need not assume the rule of ventriloquist's dummy[4] but are, instead, free to function as Virginia state judges would when faced with a fact situation not previously considered by Virginia's highest court.

Although I think the question is not free of doubt, I am willing to assume for purposes of this decision that *Guaranty Trust* forecloses consideration by an inferior federal court of the possibility that a statute of limitations not bound up with the creation of the cause of action is "procedural" rather than "substantive" and thus clearly outside the *Erie* rule as originally promulgated in *Erie* itself.[5]

To go so far, and no further, will, in my opinion, serve federalism better than will a mechanistic resort to Virginia tolling statutes and imprecise Virginia state court decisions interpreting them. "The purpose of the Erie doctrine, even as extended by York and Ragan, was never to bottle up federal courts with 'outcome-determinative' and 'integral-relations' stoppers—when there are affirmative countervailing [federal] considerations * * *." Hanna v. Plumer, 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965) (brackets in original).

It is important to remember how this particular plaintiff became enmeshed in this particular procedural booby trap. He is a Virginia resident who reasonably thought he could not bring his suit in Virginia because it lacked a long-arm statute and was thus driven out of his own state to litigate. Even so, he brought it within the two-year period allowed by his state of residence and the place of the tort, i. e., Virginia. He reasonably relied on Kentucky decisions as interpreted in United States courts that Kentucky would permit the maintenance of the suit if brought within the period of limitation of the place of the tort. Pendente lite the decisional law of Kentucky is changed retrospectively so as to make applicable to his case the shorter one-year statute of limitation of Kentucky.[6]

3. The mechanical test of *Guaranty* (from which the Court sharply retreated in *Hanna*) may be partially explained by the author's aversion to diversity jurisdiction. See Mr. Justice Frankfurter's dissent in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), where he said, "I speak as one who has long favored the entire abolition of diversity jurisdiction." Id. at 337, 63 S.Ct. at 1109.

4. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), is the high water mark of ritualistic application of state law in a federal court. Before the water began to noticeably recede, Judge Jerome Frank expressed his dismay in this colorful phrase. Richardson v. CIR, 126 F.2d

562, 567 (2d Cir. 1942). Annot., 140 A.L.R. 705 (1942).

5. It has often been suggested that Congress possess the power to enact a general statute of limitations governing diversity cases. E. g., Friendly, In Praise of Erie—And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383, 402 n. 90 (1964).

6. The issue on this appeal is completely different from the issue before the Sixth Circuit in the original *Schmutz* action. The original action was controlled entirely by Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which holds four-square that a federal court in a diversity action must apply the forum state's conflict of laws rule.

The majority decision rests heavily upon the premise that the "outcome" must be the same in the federal court as it would have been in the state court, citing *Guaranty*. For reasons developed later, I am not sure what the outcome would have been in a Virginia state court. But presently assuming that Atkins would have been barred in the state court, I think it fairly demonstrable that the opposite result—trial on the merits—could have been obtained in a federal court unhampered by either *Erie* or *Guaranty*. If this is so, then the problem becomes a purely procedural one involving the method of operation of the federal courts. In at least two ways Atkins might have avoided the *Erie* problem.

When the Kentucky Supreme Court switched its interpretation of the period of limitation, Atkins could then have sought a transfer of the proceedings to Virginia under § 1406(a) of the Judicial Code. Section 1406(a) provides:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

A district is "wrong" within the meaning of § 1406 whenever there exists an obstacle to an expeditious and orderly adjudication on the merits.[7] Thus where the obstacles to reaching the merits in the original district were both improper venue and a lack of personal jurisdiction over the defendant, the Supreme Court of the United States has approved a transfer of the proceedings to another district, rather than permit a dismissal to result in having the statute of limitations bar a new proceeding in another district. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962).

But obstacles other than improper venue or lack of personal jurisdiction have been held to warrant a transfer under § 1406. Thus a libellant who filed a libel in the Southern District of New York, thinking he could find a vessel there, was permitted to transfer the proceeding to the Maryland district where the vessel was, thereby avoiding a dismissal in New York and the bar of the statute of limitations that would have confronted a new proceeding in Maryland. Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514 (4th Cir. 1955). In ordering the Maryland district court to accept the transfer from the New York district, the late Judge John Parker of this court added:

"Certainly such transfer is in accord with the modern standards of procedure, the purpose of which is to get away from time-consuming and justice-defeating technicalities and secure an adjudication of the rights of the parties by as direct and expeditious a route as possible. The courts of the United States comprise one great system for the administration of justice * * * [There is no reason why the proceedings should not have been transferred instead of being dismissed, with the necessity of starting all over again,] where, as here, the new proceeding would be barred by the statute of limitations." Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514, 517 (4th Cir. 1955).

Had the Atkins' Kentucky proceeding been transferred to the Western District of Virginia while the present action was awaiting trial there, the two proceedings could have been consolidated and tried there as one case. See Abbott Laboratories v. Gardner, 387 U.S. 136 at 154–

7. "The statute does not refer to 'wrong' venue, but rather to venue laid in a 'wrong division or district.' We conclude that a district is 'wrong' within the meaning of § 1406 whenever there exists an 'obstacle [to] * * * an expeditious and orderly adjudication' on the merits." Dubin v. United States, 380 F.2d 813, 815 (5th Cir. 1967). Accord, Mayo Clinic v. Kaiser, 383 F.2d 653 (8th Cir. 1967).

155, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The obstacle to an orderly and expeditious adjudication on the merits of Atkins' claim in Kentucky was the novel and unanticipated application of that state's one-year statute of limitation. When Atkins commenced the Kentucky action the existing decisions caused him justifiably to believe he could rely on the longer Virginia provision.[8] What made the Kentucky district "wrong" as a place to reach the merits of Atkins' claim was the unexpected obstacle created by the changed rulings of the Kentucky state courts after his action was commenced.

After the Supreme Court of the United States denied certiorari to the Court of Appeals for the Sixth Circuit, Atkins v. Schmutz Mfg. Co., Inc., 389 U.S. 829, 88 S.Ct. 92, 19 L.Ed.2d 86 (1967), it was finally settled that the one-year Kentucky statute of limitation was an insurmountable obstacle to reaching the merits of Atkins' claim in the Kentucky district.[9] Atkins was then in a "wrong" district within the meaning of § 1406 and a transfer of the action to the Western District of Virginia would have preserved the tolling effect on the Virginia statute that began with the commencement of the federal court action in Kentucky. By commencing this action within two years of his injury, Atkins had shown that diligence required by the Virginia statute and the delays that resulted thereafter came out of moves by the defendant to avoid trial of Atkins' claim on the merits.

That Atkins' situation at this point came within the protection of § 1406 seems transparently clear from what the Supreme Court of the United States has said of that section:

"The problem which gave rise to the enactment of the section was that of avoiding the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn. Indeed, this case is itself a typical example of the problem sought to be avoided, for dismissal here would have resulted in plaintiff's losing a substantial part of its cause of action under the statute of limitations merely because it made a mistake in thinking that the respondent corporations could be 'found' or that they 'transact * * * business' in the Eastern District of Pennsylvania. The language and history of § 1406(a), both as originally enacted and as amended in 1949, show a congressional purpose to provide as effective a remedy as possible to avoid precisely this sort of injustice.

"The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendant or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—*that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.* When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the en-

---

8. For a discussion of Kentucky law as it was understood in the federal courts when Atkins commenced his action in Kentucky, see Atkins v. Schmutz Mfg. Co., Inc., 372 F.2d 762, 763 (6th Cir. 1967).

9. There is no suggestion that the judgment of the Kentucky district court adjudicates the merits of Atkins' complaint.

actment of § 1406(a), recognized that the 'interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.' It would at least partially frustrate this enlightened congressional objective to import ambiguities into § 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired." Goldlawr v. Heiman, 369 U.S. 463, 466–467, 82 S.Ct. 913, 915 (1962). (Emphasis added.)

The *Goldlawr* language just quoted also strongly suggests that the commencement of the Kentucky proceedings tolled "whatever statutes of limitation would otherwise apply." In Atkins' case this could only refer to the two-year Virginia statute of limitations since the one-year Kentucky statute had already run when the Kentucky proceeding commenced. Indeed it was the application of the Kentucky statute which deprived Atkins of a remedy in that state and brought his claim within the protective policy of § 1406. It has been held, where lack of personal jurisdiction

in the transferor district provided the basis for a venue transfer under § 1406, that the statute of limitation of the transferor state transferred with the action. Mayo Clinic v. Kaiser, 383 F.2d 653 (8th Cir. 1967). Whatever may be the applicable rule where the obstacle to reaching the merits is either defective venue or personal jurisdiction,[10] it would both defeat the general protective policy of § 1406 and the particular justification for a venue transfer if the statute of limitations of Kentucky were to follow a transfer of Atkins' action to Virginia.

Thus, as I see the matter, the commencement of Atkins' action in Kentucky tolled the running of the Virginia statute of limitations. When it became clear he was barred from a remedy in Kentucky, he could have transferred the action to the Virginia district court under § 1406 and have proceeded to the merits of his claims without having the Virginia statute of limitations bar his claim. Moreover, the Virginia district by this time was one in which the case "could have been brought" within the meaning of § 1406 since the Virginia long-arm statute had been enacted in 1964, long before the Supreme Court of the United States denied certiorari to

10. In Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), it was held that the law of the transferor district followed a case transferred on motion of the *defendant* under § 1404(a). The Court reserved the question whether a § 1404(a) transfer sought by the plaintiff would be governed by the same rule, id., at 639–640, and there seem to be good reasons for not taking along the law of the transferor district where the plaintiff seeks a transfer from a district "wrong" under § 1406.

In Les Schwimley Motors, Inc. v. Chrysler Motors Corp., 270 F.Supp. 418, Judge Halbert expressed the viewpoint that transferring a diversity case to a district in another state, on motion of the plaintiff, does not necessarily carry with it the statute of limitations of the state in which the suit was commenced, citing the proposal of the American Law Institute in its Study of the Division of Jurisdiction Between State and Federal

Courts. Judge Halbert finds himself in accord with the viewpoint of the late Professor Brainerd Currie as indicated in the following quotation from the opinion of the district court:

"Viewing the federal courts as independent forums for the invocation of legal rights created by state law, the essence of the decision in Erie R. Co. v. Tompkins, supra, militates against the unthinking adoption of one forum's statute of limitations in a case which no longer has any substantial connection with that forum. If such a course does not violate the due process clause (See: Home Insurance Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926) it certainly violates the sense of 'juster justice' that hopefully prevails in the federal system (See: Hart and Wechsler, The Federal Courts and the Federal System (1953) at pp. 652, 892–900; Hart, The Relations between State and Federal Law, 54 Colum.L. Rev. 489)." Id. at 420–421.

the Court of Appeals for the Sixth Circuit.

I concede, of course, that the path to a trial on the merits envisioned above is not a broad, inviting one. I suggest only that it may have been negotiable. But there is another and easier way that Atkins might have obtained a trial on the merits.

Despite the lack of a Virginia long-arm statute at the time, Atkins could have originally filed suit in the district court in Virginia. When the defendant predictably moved to dismiss for lack of jurisdiction, Atkins could have sought a transfer of venue under 28 U.S.C. § 1406 and would have brought himself squarely within Goldlawr v. Heiman, supra. Pursuant to *Goldlawr*, presumably the district judge in Virginia would have transferred the case to the District Court of Kentucky and under the doctrine of Mayo Clinic v. Kaiser, 383 F.2d 653 (8th Cir. 1967), the Virginia statute of limitations would have "followed" the case to the District Court of Kentucky and the shorter Kentucky statute of limitations would have had no effect.[11]

Thus it seems that there are at least two ways by which specialists in federal jurisdiction, if there are any outside of the faculties of law schools, might have been able to obtain for the plaintiff a trial on the merits in a federal court. If this be so, the outcome-determinative test of *Guaranty* is not invoked, or if invoked, is simply avoided by the method of operation of the federal courts which is surely not a matter of state regulation. Summarizing, it is apparent that the *Erie* decision alone does not require the court's result. "In view of Brandeis' careful limitation of his statement of unconstitutionality to 'substantive rules of common law,' it is strange that *Erie*

has sometimes been claimed to have handcuffed federal procedure to that of the state where the court sits—although in this instance most critics have had the grace to admit that their fears sprang not from *Erie* itself but from some overly enthusiastic expressions in Guaranty Trust Co. of New York v. York * * *."[12] Whether the conduct of the plaintiff in instituting suit in Kentucky amounts to a tolling of the statute certainly relates as much to "procedure" as it does to "substance." For conflicts of law purposes, questions of application of statutes of limitations have traditionally been classified with procedure. The conflicts of laws rule in most jurisdictions is that *lex fori* controls Michigan Insurance Bank v. Eldred, 130 U.S. 693, 9 S.Ct. 690, 32 L.Ed. 1080 (1889); Mc Elmoyle for Use of Bailey v. Cohen, 38 P.S. 311, 10 L.Ed. 177 (1839); Goodrich, Conflict of Laws § 85 (4th ed. 1964). In *Guaranty Trust*, supra, the Supreme Court declined to categorize statutes of limitations as either "substantive" or "procedural" for *Erie* purposes.

Similarly, the "outcome-determinative test" of *Guaranty* is not violated for the result of trial on the merits would have occurred in the state court of Virginia had it been possible at the time for Virginia process to run outside the state.[13] "Forum shopping" within the State of Virginia is not involved for presumably the plaintiff would have been well content in a Virginia state court if its process could have reached to Kentucky.[14] Finally, since *Byrd*, it is not at all clear that the substantive right in tort is in this case "bound up" either with the statute of limitations or with the question of the tolling of that statute, for this statute of limitations is simply a general one and not a

---

11. See note 10 supra; accord, Headrick v. Atchison Topeka and Santa Fe Ry. Co., 182 F.2d 305 (10th Cir. 1950).

12. H. Friendly, Benchmarks 175 (1967). (Footnotes omitted.)

13. Whether "outcome" would have been different if the *present* action had been

begun in the Virginia state court is discussed below.

14. Whether forum shopping was involved in starting the present action in a federal court in Virginia is also discussed below.

condition precedent to the exercise of a special right created by statute, e. g., wrongful death. The statute in this case is not prescriptive and the running of the period does not destroy the underlying right. See Comment, Developments—Statute of Limitations, 63 Harv. L.Rev. 1177, 1186 (1950); Page v. Cameron Iron Works, 155 F.Supp. 283, 286 (S.D.Texas 1957).

Mr. Justice Harlan, concurring in *Hanna,* gave us good advice when he said, "To my mind the proper line of approach in determining whether to apply a state or federal rule, whether 'substantive' or 'procedural' is to stay close to basic principles by inquiring if the choice of rule would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation." The primary decision here was whether to sue the defendant. That decision remains governed by state regulation creating a tort action against the defendant. Application of Mr. Justice Harlan's test plainly leaves us free to permit this plaintiff a trial on the merits. Doing so will divert no stream of cases into the federal courts in Virginia or elsewhere. Doing so does not dishonor the Virginia statute of limitations for the reason that the action was commenced in Kentucky within the Virginia two-year period. To now permit this plaintiff a trial on the merits is not in derogation of Virginia policy but is plainly in accord with it. The enactment of the Virginia long-arm statute is a plain enunciation of a policy that its citizens be accorded the right of a trial on the merits against out-of-state tortfeasors.

The court recognizes that the state policy embodied in § 8–24 (the two-year statute of limitations) was effectuated by the filing of the Kentucky diversity action. The docket entries (reproduced in appellant's Appendix) in the Kentucky district court indicate that extensive discovery was taken. For some months the plaintiff was a patient in an institution maintained by the defendant's insurer for hospitalization and treatment. Thus it is clear that the policy embodied in § 8–24, as interpreted by the Virginia Supreme Court of Appeals, has been served. See Hawks v. Dehart, 206 Va. 810, 813, 146 S.E.2d 187 (1966). There is no danger here of the assertion of a fraudulent and stale claim to the surprise of the defendant after evidence may have been lost and the facts may have become obscure or after witnesses have died or disappeared.

Despite the warning in *Hanna,*[15] the majority feels duty bound by *Guaranty* ritualistically to apply Jones v. Morris Plan Bank of Portsmouth, 170 Va. 88, 195 S.E. 525 (1938). And they read it as foreclosing a federal district court sitting in Virginia from holding that the filing of the diversity action in Kentucky tolled the running of the Virginia statute of limitations. All that *Jones* holds, as I read it, is that the statute of limitations of Virginia was not tolled by the commencing of an action in the *wrong* state forum. Atkins did not file his suit in the *wrong* forum. It was the right forum and, indeed, the only forum, for the reason that he could obtain service of process nowhere else. Nor do I read the *Jones* decision as a statement or an analysis of state policy. It is simply an interpretation of the statute on the familiar premise of statutory construction that the enumeration of some things implies the exclusion of others. Unlike the majority, I am not at all certain that the Supreme Court of Appeals of Virginia would now hold, on the peculiar facts of our case, that Atkins has not successfully tolled the statute of limitations. Whether I am right about that or not, I am quite certain that neither the *Jones* case nor §§ 8–24 and 8–34 enunciates a state policy that a Virginia resident who is injured in Virginia shall not be entitled to a

---

15. " 'Outcome determination' analysis was never intended to serve as a talisman." 380 U.S. at 466, 85 S.Ct. at 1141.

trial on the merits against a non-resident tortfeasor. There is no such Virginia interest and Virginia has, in my opinion, expressed no such policy either by statute or by decision of its highest court. *Byrd* teaches that when there is no strong state interest in one result but there is a strong federal interest in the opposite result, the federal interest prevails. It seems to me, a fortiori, that where there is a strong state policy (as indicated by the state created tort action and the recent Virginia long-arm statute) and a strong federal policy both of which favor trial on the merits, it does not serve federalism mechanically to apply a readily distinguishable state decision that may be read, but does not have to be read, to require the opposite result.

*Jones* is distinguishable on yet another ground. In *Jones*, the plaintiff began a second action *after* the dismissal of a prior, timely proceeding and sought to exclude from the statutory period the time during which the earlier action was pending. The Supreme Court of Appeals of Virginia held that this period could not be excluded and barred the later-commenced action. It is clear, however, that a timely commenced action tolls the running of the Virginia statute of limitations. *Jones*, supra. Atkins, in fact, commenced the present Virginia action while the Kentucky proceedings were still pending and during the period in which those proceedings continued to toll the running of the Virginia statute. For this reason alone the Virginia proceeding may be regarded as timely commenced, and I do not think it unreasonable to suppose that the Supreme Court of Appeals of Virginia would reach this conclusion.

I concede that if the position I hold had been known in advance as the rule

of the Fourth Circuit, Atkins would undoubtedly have been influenced to choose a federal forum. But it did not happen that way. Atkins chose the federal forum certainly without knowing what the federal court would do,[16] and I suggest, without knowing how the state courts would view his problem. And it is not impossible he was influenced by other factors—including the possibility that if he began in the state court the defendant would remove to the federal court.[17] Plainly one of the twin aims of *Erie*[18]—to discourage forum shopping—is simply not involved here. Moreover, the precise problem confronting us will not likely arise again because of the new Virginia long-arm statute. Thus, even if we forecast badly how Virginia's highest court might view this tolling problem, no great injury will have been done to federalism.

What of the other twin aim of *Erie:* "avoidance of inequitable administration of the laws?" In Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4 Cir. 1965), Judge Sobeloff clearly perceived the impact of *Byrd* and *Hanna* on *Guaranty.* In a helpful analysis of the modern *Erie* rule, he concluded:

> "If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity
>
> \*  \*  \*  \*  \*  \*
>
> "At the heart of Erie was the intention to prevent different legal treatment of parties merely because of a variation in the residence of their opponent." 349 F.2d at 64.

16. His fears, not his hopes, are now realized.

17. See Hanna v. Plumer, 380 U.S. 460, 475, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring).

18. In *Hanna,* the Supreme Court said: "The 'outcome-determination' test (of Guaranty Trust) therefore cannot be read without reference to the twin aims of the Erie rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." 380 U.S. at 468, 85 S.Ct. at 1142.

The perceived evil of Swift v. Tyson was discrimination against residents in favor of non-residents. The same evil is present in the majority result. The non-resident citizen of Kentucky committing a tort within Virginia is afforded the benefit of a shorter statute of limitations than permitted a citizen of Virginia. Thus the spirit of *Erie* and the cause of federalism would be advanced by ignoring the Kentucky short statute of limitations which becomes operative by the pure accident of defendant's residence in Kentucky and the lack of a long-arm statute in Virginia. The second of the twin aims of *Erie*, "avoidance of inequitable administration of the laws," would be served by permitting this plaintiff a trial on the merits.

If we remember that we *are* applying the Virginia statute of limitations and that the question confronting us is simply whether, on the facts of this case, it has been tolled by the commencement of an action within its two-year period, the problem will yield, in my opinion, to the application of well recognized federal equitable principles. There is ample authority that the equitable remedies doctrine survived *Erie*.[19] Indeed, even in Guaranty Trust Co. of New York v. York, it was said by Mr. Justice Frankfurter that: "[the decision] does not mean * * * that a federal court may not afford an equitable remedy not available in a State court." 326 U.S. at 105, 65 S.Ct. at 1468. "State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. Contrawise, a federal court may afford an equitable remedy for a substantive right recognized by a State even though

a State court cannot give it." Id. at 106, 65 S.Ct. at 1468.

It is clear that in the federal courts the equitable doctrine of tolling is favored. Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). And it is equally clear, I think, that there is emerging a clearly expressed federal interest in the disposition of litigation on the merits. As Mr. Justice Black said in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373, 86 S.Ct. 845, 851, 15 L.Ed. 2d 807 (1966), "If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits."

In Burnett v. New York Central R.R. Co., 380 U.S. 424, 426–427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), it was said that classification of a statute of limitations as "substantive" rather than "procedural" does not determine whether or under what circumstances the limitation period may be extended.

The Court went on to say (with reference to a federal statute of limitations) that "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." Id. at 427, 85 S.Ct. at 1054.

For the reasons indicated by Mr. Justice Black for the Supreme Court in *Goldlawr*, I believe that Atkins, by commencing his Kentucky proceedings within the time period allowed under the Virginia statute of limitations, has shown that "proper diligence on the part of plaintiff which such statutes of limitation were intended to insure." 369 U.S. at 467, 82 S.Ct. at 916.

19. Sprague v. Ticonic Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); General Electric Co v. American Wholesale Co., 235 F.2d 606, 608 (7th Cir. 1956); Anheuserbusch, Inc. v. Du Bois Brewing Co., 175 F.2d 370, 373 (3rd Cir. 1949); Purcell v. Summers, 145 F.2d 979, 990 (4th Cir. 1944); Martin v. Reynolds Metals Co., 224 F.Supp. 978, 982 (D.Ore.1963), aff'd 337 F.2d 780 (9th Cir. 1964); Hertzbergs, Inc. v. Ocean Acc. & Guar. Corp., 42 F.Supp. 52 (D.Neb.1941), aff'd 132 F.2d 438 (8th Cir. 1943); Wall & Beaver Street Corp. v. Munson Line, 58 F.Supp. 101 (D.Md.1943). See Black & Yates Mahogany Ass'n, 129 F.2d 227, 233 (3rd Cir. 1942), cert. denied, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942), and cases there cited.

Atkins' alleged injuries are severe, his claimed damages great. Five years have elapsed since commencement of the Kentucky proceedings, and trial on the merits still eludes him. I believe this court is not straitjacketed by *Guaranty* but is, instead, left free by the *Erie-Guaranty-Byrd-Hanna* doctrine to accord this plaintiff what all agree he ought to have in an honest and fair judicial system: adjudication on the merits.

I would reverse.

